**Clyde W. ROWLEY and Pamela Rowley, Plaintiffs,**

v.

**FIRST COLUMBIA LIFE INSURANCE COMPANY, Defendant.**

**MISSISSIPPI LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, Intervenor and Counter–Plaintiff,**

v.

**Clyde W. ROWLEY and Pamela Rowley, Counter–Defendants.**

**Civ. A. No. J88–0432(W).**

United States District Court, S.D. Mississippi, Jackson Division.

Dec. 29, 1989.

---

T. Mack Brabham, McComb, Miss., for plaintiffs.

Neville H. Boschert, Robert House, Watkins, Ludlam & Stennis, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the intervenor and counter-plaintiff, Mississippi Life and Health Insurance Guaranty Association (hereinafter the Guaranty Association), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. By its motion, the Guaranty Association seeks a ruling from the court that the Guaranty Association, a statutorily-created entity which assures the accounts of any of its members which become insolvent, is not liable to the plaintiff on that part of plaintiff's default judgment for punitive damages and attorney fees obtained against an insolvent member of the Guaranty Association. Having thoroughly considered Guaranty Association's motion and plaintiffs' response in opposition thereto, the court finds that the motion is well taken and should be granted.

On August 23, 1988, the plaintiffs filed this case against First Columbia Life Insurance Company (hereinafter First Columbia) for First Columbia's failure to pay certain claims under a health insurance policy issued by First Columbia to the plaintiffs. Since First Columbia failed to appear and defend the lawsuit, the plaintiffs obtained a default judgment against First Columbia on September 28, 1988, for $147,053.80. The judgment represented $22,053.80 in medical claims, $25,000.00 for attorney fees, and $100,000.00 in punitive damages.

Thereafter, on November 18, 1988, First Columbia became insolvent and was placed into liquidation under a judgment entered by the Fourteenth Judicial District Court, Parish of East Baton Rouge, Louisiana. Pursuant to Miss.Code Ann. § 83–23–201, et seq., particularly § 83–23–203(1),[1] the Mississippi Life and Health Insurance Guaranty Association Act, the Guaranty Association then became obligated to pay contractual obligations owed by First Columbia to the plaintiffs. So, on February 1, 1988, the Guaranty Association tendered to plaintiffs a check for $22,122.24, the amount the Guaranty Association believed to represent First Columbia's contractual

---

**1.** Section 83–23–203 provides in pertinent part: ... (1) an association of insurers is created to enable the guaranty of payment of benefits and of continuation of coverage, ....

obligations to the plaintiffs. The plaintiffs contend that the Guaranty Association is obligated to pay more, namely, plaintiffs' attorney fees and the amount of punitive damages included in the default judgment against First Columbia entered in plaintiffs' favor.

Allowed to intervene as counter-plaintiff, on February 28, 1989, the Guaranty Association filed a counterclaim for a declaratory judgment. The Guaranty Association now seeks a ruling from the court that pursuant to Miss.Code Ann. § 83–23–215(3) (1985), it is only liable to the plaintiffs for contractual obligations owed by First Columbia, which do not include attorney fees or punitive damages.

We begin our analysis of the presented question by identifying the statute of the Mississippi Life and Guaranty Insurance Association Act which obligates the Guaranty Association to satisfy the contractual obligations of First Columbia. Section 83–23–215(3)(b) and (9) provides in pertinent part:

> If a foreign or alien insurer is an insolvent insurer, the association shall, subject to the approval of the commissioner:
> (b) assure payment of the contractual obligations of the insolvent insurer to residents;
> (9) the contractual obligations of the insolvent insurer for which the association becomes or may become liable shall be as great but no greater than the contractual obligations of the insolvent insurer would have been in the absence of an insolvency ....

Both parties concede that the purpose of the Mississippi Life and Health Insurance Guaranty Association Act is stated in Miss. Code Ann. § 83–23–203 (1985) and reads as follows:

> The purpose of this article is to protect policy owners, insurers, beneficiaries, annuitants, payees and assignees of life insurance policies, health insurance policies ... against failure in the performance of contractual obligations due to the impairment of insolvency of the insurer issuing such policies or contracts.

A contractual obligation is defined by the Act as "any obligation under covered policies." Miss.Code Ann. § 83–23–209(d) (1985).

The plaintiffs argue that "any obligation" should include the implied covenant or obligation of "good faith and fair dealing." Plaintiffs then reason that a breach of this duty would exist when an insurance company exhibits "bad faith", thereby subjecting itself to an award of attorney fees and punitive damages. Although not recoverable where a breach of contract occurs, punitive damages are recoverable where a breach "results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." *Blue Cross & Blue Shield v. Maas*, 516 So.2d 495, 496 (Miss. 1987).

In a recent, somewhat analogous case decided by the Mississippi Supreme Court, *Bobby Kitchens, Inc. v. Mississippi Insurance Guaranty Association*, 560 So.2d 129 (1989), (on rehearing en banc on issues which do not concern this lawsuit), the Mississippi Insurance Guaranty Association (MIGA),[2] which assures property and casu-

---

**2.** MIGA was created pursuant to Miss.Code Ann. § 83–23–101 (1972), *et seq.*, specifically Miss. Code Ann. § 83–23–111 (1972). The stated purpose of MIGA is parallel to that of the Guaranty Association *sub judice*. Miss.Code Ann. § 83–23–103 (1972) provides in pertinent part:

> The purpose of this article is to provide a mechanism for the payment of covered claims under certain insurance policies ... because of the insolvency of an insurer .... [*Compare* with § 83–23–203 quoted on page 1261 of the opinion].

In addition, the powers and duties of MIGA are similar to those statutorily imposed upon the Guaranty Association *sub judice*. *Compare* § 83–23–215(3)(b) and (9) quoted on page 1261 of the opinion, to Miss.Code Ann. § 83–23–115(1)(a) and (b) (1972), which states in pertinent part as follows:

> (1) The association shall:
> (a) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within thirty (30) days after the determination of insolvency .... In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.

alty insurance, was sued for tortious breach of contract, breach of fiduciary duty, breach of statutory duty to defend an insolvent insurance company, and breach of statutory duty of good faith. The plaintiff sought both actual and punitive damages. The Court said, "MIGA is statutorily prohibited from paying anything other than covered claims" and held that as a matter of law, MIGA could not be liable for punitive damages. For authority, at page nine of its opinion, the Court cited a passage from *Isaacson v. California Insurance Guaranty Association*, 193 Cal.App.3d 93, 215 Cal.Rptr. 652 (Cal.App. 2 Dist.1985), superceded by *Isaacson v. California Insurance Guaranty Association*, 44 Cal.3d 775, 244 Cal.Rptr. 655, 750 P.2d 297 (1988), which affirmed the lower court's denial of punitive damages against the California Insurance Guaranty Association (CIGA), an association similar in scope and purpose to that of MIGA. The passage recites as follows:

> [W]e accept respondent's argument that CIGA's nature as a legislative creation designed to protect the public from the insolvency of insurers, with definite limitations on the payments of covered claims, negates the rationale for imposition of punitive damages on CIGA.
>
> As this division recently stated in *Magallanes v. Superior Court*, 1985, 167 Cal. App.3d 878, 213 Cal.Rptr. 547, denying punitive damages in a case based on the market share theory of liability, *"The concept of punitive damages embodies a rule for individualized punishment of a wrongdoer whose conduct toward the plaintiff is a particularly outrageous ....* Aside from the difficulty of assessing CIGA's net worth, upon which the recovery of punitive damages is usually based, we are confronted with the nature of CIGA as an association of certain insurers ... funded by premium payments from its member insurers ..., which ultimately receive their funding from the insured public. Imposing punitive damages on an individual insurer

makes sense; presumably, its premiums will rise and its customers will seek coverage from insurers with lower premiums. The impact on the insured public in such a case is not counter to the punitive and deterrent purposes sought to be achieved by the imposition of punitive damages.

> However, if punitive damages are imposed on CIGA, the increased premiums would be spread among all insurers, and ultimately to all insureds, regardless of the culpability of the individual insurer. There might indeed be a deterrent effect on CIGA; but compensatory damages will achieve that effect, without the possible devastating effect on the public. Appellants are not entitled to recover punitive damages against CIGA.

Then in *Crider v. Life & Health Insurance Guaranty Association*, 188 Ga.App. 407, 373 S.E.2d 30 (1988), the Georgia Court of Appeals addressed a similar issue involving statutory provisions which are almost identical to the Mississippi Code provisions at issue on this cause of action. On similar facts, in *Crider* the plaintiff sought to recover from the Life and Health Insurance Guaranty Association bad faith penalties and attorney fees initially obtained by judgment rendered against plaintiff's insurance company prior to its insolvency. The court held that the Guaranty Association was liable only for contractual claims for benefits under the policies which had been issued by the company that was now insolvent. The court stated:

> Since appellants seek [to recover on a judgment representing] only damages based upon Continental's failure to perform its statutory obligations ... to hold that they can proceed against [appellee] on their claims would be to authorize the dissipation of funds which were intended to benefit only those insureds who, entirely unlike appellants, have never even been initially paid those contractual benefits for which they made premium payments and to which they would be enti-

---

(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

tled under their policies issued by insolvent insurers. Having recovered their contractual claims for benefits, appellants are, insofar as a potential recovery [of their unsatisfied judgment for OCGA § 33-4-6 damages] is concerned, in no better position than any other plaintiff who has [an unsatisfied judgment] for damages against an insolvent defendant. The fact that appellants are insureds and [Continental] is an insolvent insurer is not, standing alone, a basis for hold that [appellee] is an alternative source of appellant's recovery of the statutory damages they seek.

Citing from *Colwell v. Voyager Casualty Insurance Company*, 184 Ga.App. 842, 363 S.E.2d 310 (1987).

The *Crider* court noted that the purpose underlying the creation of the Guaranty Association is to "protect ... insureds ... against failure in the performance of contractual obligations due to the impairment or insolvency of the insurer ..." and that "pursuant to this clear expression of legislative intent, it would require more than a liberal construction to achieve an expansion of the scope of claims which are assertable against appellee so as to encompass claims for damages based upon an insolvent insurer's failure to perform its statutory obligations. Such an expansion can only be accomplished through legislation rather than through judicial construction of the existing applicable statutory provisions." 373 S.E.2d at 32.

Agreeing with the wisdom contained in the foregoing juridical pronouncements, the court, therefore, finds that the Guaranty Association is liable only for contractual obligations owed to the plaintiffs by First Columbia. These contractual damages do not encompass awards of punitive damages or attorney fees which comprise bad faith tort damages.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion of the Mississippi Life and Health Insurance Guaranty Association for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is hereby granted. A judgment pursuant to the local rules is to be entered accordingly.

SO ORDERED AND ADJUDGED.