**COMMERCIAL UNION INSURANCE COMPANY, Plaintiff–Counterclaim–Defendant, Cross-claim Plaintiff–Appellee,**

v.

**SEPCO CORPORATION, Defendant/Third–Party Plaintiff, Counterclaim Defendant, Cross-claim Defendant, Cross-claim Plaintiff–Appellee, Cross–Appellant,**

**United National Insurance Company, Third–Party Defendant, Counterclaim–Plaintiff, Cross-claim Defendant–Appellee,**

**Home Indemnity Company, Third–Party Defendant, Counterclaim–Defendant, Cross-claim Defendant–Appellee,**

**Canadian Universal Insurance Company, Ltd., Third–Party Defendant, Counterclaim–Defendant, Cross-claim Defendant–Appellee,**

**Continental Casualty Company, Third–Party Defendant, Counterclaim–Defendant, Cross-claim Defendant,**

**Insurance Company of North America, and First State Insurance Co., Third–Party Defendants, Counterclaim–Defendants,**

**Continental National American Group, Third–Party Defendant, Counterclaim–Defendant–Appellee,**

**Interstate Fire & Casualty Company, Third–Party Defendant, Counterclaim–Defendant,**

**Mission Insurance Company, Third–Party Defendant, Counterclaim–Defendant, Cross-claim Defendant,**

---

Fireman's Fund Insurance Company, Third–Party Defendants, Cross-claim Defendant–Appellee,

Alabama Insurance Guaranty Association, Third–Party Defendant, Counterclaim–Defendant–Appellant, Cross–Appellee.

No. 89–7556.

United States Court of Appeals, Eleventh Circuit.

Dec. 7, 1990.

Rehearing and Rehearing En Banc Denied Jan. 10, 1991.

See also 878 F.2d 1395.

Charles A. Stewart, III, Robert C. Black, John R. Bradwell, Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery, Ala., for Ala. Ins. Guar. Ass'n.

Connie Ray Stockham, McDaniel, Hall, Conerly & Lusk, Birmingham, Ala., for Commercial Union Ins. Co.

Susan Anderson, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, Ala., for Sepco Corp.

Steven A. Benfield, Rives & Peterson, Birmingham, Ala., for Continental Nat. American Group–CNA.

Robert D. Hunter, Lange, Simpson, Robinson & Somerville, Birmingham, Ala, for Interstate Fire & Cas. Co.

James A. Bradford, Balch & Bingham, Birmingham, Ala., for Canadian Universal Ins. Co., Ltd.

Richard S. March, Galfand, Berger, Lurie & March, Philadelphia, Pa., for United Nat. Ins. Co.

John S. Civils, Jr., Huie, Fernambuco & Stewart, Birmingham, Ala., for Home Ins. Co., interested party.

Before TJOFLAT, Chief Judge, ANDERSON, Circuit Judge, and ESCHBACH *, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellant Alabama Insurance Guaranty Association ("AIGA"), an entity organized by the Alabama Insurance Guaranty Association Act, Ala.Code §§ 27–42–1 to –20 (1986 Rep.Vol.) ("the Act"), appeals from the district court's June 30, 1989 order granting summary judgment to appellee Sepco Corporation ("Sepco"). The district court ruled that appellant is liable to Sepco for certain defense costs incurred by Sepco's insolvent insurer, Mission Insurance Company ("Mission"). Because we believe that AIGA was properly held responsible under the Act, we affirm the judgment of the district court.[1]

## I. BACKGROUND

Between 1970 and 1979, Sepco Corporation, an Alabama corporation during the relevant time, manufactured insulation products containing asbestos. A flood of litigation by plaintiffs claiming injury from exposure to asbestos followed. Although most of these claims did not result in liability, they generated substantial costs associated with Sepco's defense. It is the liability for these costs that is at issue on this appeal.

During the period that Sepco manufactured asbestos products, Sepco had contracted seriatim with several insurance carriers for liability insurance. The insurance policies also provided that the carriers would bear defense costs. In 1981, Commercial Union Insurance Company ("Commercial Union"), which had been Sepco's insurance provider for eight out of the ten years in question, filed an action seeking a declaration of its responsibilities under the policies it had issued. Although Commercial Union argued that it should only be liable for the asbestos claims involving injuries that were actually manifested during its periods of coverage, the district court rejected that theory and held that each insurance carrier would be responsible for claims alleging asbestos exposure during the period that its policy was in effect. R3–189. We affirmed the district court's adoption of this "injurious exposure" theory in 1985. *Commercial Union Ins. Co. v. Sepco Corp.*, 765 F.2d 1543 (11th Cir.1985).

Adoption of this theory created complexity because the period of a claimant's exposure to asbestos did not necessarily coincide with the period that a given insurance company's coverage was in place. The district court solved this problem with a pro-rata system whereby an insurer would be liable for defense costs in proportion to the number of months that it provided coverage during any particular claimant's period of exposure to asbestos, with Sepco being responsible for any periods of self-insurance. R3–189. In 1984, the district court effectuated the pro-rata system administratively by ordering Commercial Union, the carrier with the largest percentage of coverage during the claimants' exposure, to "take the lead" in providing for Sepco's defense and then receive reimbursement on a pro-rata basis from the other carriers and Sepco. R3–264. This administrative arrangement is not challenged on this appeal.

A problem arose in 1987 when Mission Insurance Company, which provided insur-

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Sepco also cross-appealed from that part of the district court's order holding that Sepco was liable for the defense costs for which Mission was primarily liable. As explained in the text below, the district court correctly held that Sepco was thus responsible, and AIGA was in turn liable to Sepco. Therefore, there is no merit in Sepco's appeal.

ance coverage for one year between September 1, 1978, and September 1, 1979, was adjudicated insolvent and ordered liquidated by a Los Angeles, California Superior Court on February 24, 1987. R7–440 Exhibit G. Commercial Union had already expended considerable sums pursuant to the district court's order with the expectation of recovering the costs associated with asbestos exposure while Mission's insurance policy was in force. Mission, of course, could not satisfy this obligation.

The district court resolved the problem in its opinion of November 1987, R5–357, 358, and its opinion of June 1989, R7–456. The district court held that AIGA would be liable for Mission's pro-rata share of defense costs and, to the extent that such share exceeded AIGA's liability under the Act, Sepco would be responsible for Mission's share. The district court ruled that Sepco effectively lacked insurance coverage for the September 1978 to September 1979 year, and that Sepco was thus responsible for same within the meaning of the district court's 1984 administrative order.

## II. DISCUSSION

■■■ In order for AIGA to be liable, Sepco's claim must be within the definition of a "Covered Claim" under the Act. Ala. Code § 27–42–5(4) (Rep.Vol.1986) provides:

(4) COVERED CLAIM. An unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1981 and (i) the claimant or insured is a resident of this state at the time of the insured event; or (ii) the property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting

association, as subrogation recoveries or otherwise.

Under this section, only a claim by an insured or a third party claimant is covered by the Act. This is clear in light of the Act's purpose as expressed by Ala.Code § 27–42–2 (Rep.Vol.1986) (emphasis added):

The purpose of this chapter is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and *to avoid financial loss to claimants or policyholders* because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies and to provide an association to assess the cost of such protection among insurers.

Thus, AIGA is liable for Mission's proportionate share of defense costs only to the extent that Sepco is liable for these costs.[2]

AIGA's primary argument[3] is that the general rule provides that an insured is not liable for the fees of attorneys hired by the insurance company; rather, the contract is between the insurance company and the attorney, and only the insurance company is liable for fees. Thus, AIGA argues that the insured in this case, Sepco, is not liable for pre-insolvency defense costs, and since Sepco is not liable, AIGA is not liable. To support this proposition, AIGA cites *Ohio Ins. Guar. Assoc. v. Simpson*, 1 Ohio App.3d 112, 439 N.E.2d 1257 (1981). In *Simpson*, the court held that an attorney hired by an insolvent insurer could not recover from a state guaranty association because the legal services were purely a matter of contract between the attorney and the insurer. Also, in *Florida Ins. Guar. Assoc. v. Price*, 450 So.2d 596 (Fla. Dist.Ct.App.1984), the court affirmed the trial court's ruling that the insured under an automobile policy was not required to personally pay pre-insolvency defense costs incurred on his behalf by the insolvent insurer. Similarly, in *Greenfield v. Pennsylvania Ins. Guar. Assoc.*, 256 Pa.Super.

**2.** AIGA argues that under some circumstances AIGA is not liable even if the insured is liable. Although that may be true, under the circumstances of this case, AIGA's arguments of nonlia-

bility even if Sepco is liable are wholly without merit.

**3.** AIGA's other arguments on appeal are without merit and warrant no discussion.

136, 389 A.2d 638 (1978), the court held that unpaid attorneys hired by an insolvent insurer could look only to the insurer's statutory receiver for payment.

The problem with AIGA's argument is that it ignores the long history of this litigation. Commercial Union is not analogous to an attorney hired by an insurer before insolvency. Commercial Union arranged for Sepco's defense only because the district court in 1984 had ordered Commercial Union to do so. The 1984 order was an administrative arrangement imposed by the court to handle the complexities created by the fact that numerous insurance companies were responsible for defense costs, each being responsible in proportion to the number of months that it provided coverage during a particular claimant's period of exposure. Significantly, the 1984 order expressly made Sepco itself responsible for defense costs "for the time during which it lacked insurance coverage," R3–264 at 4, because otherwise the several insurance companies would be required "to defend a suit involving exposure unquestionably outside the coverage period." *Id.* at 5. As part of the administrative arrangement, Commercial Union was required to "take the lead," arrange for the defense, incur the initial cost thereof, and then seek appropriate reimbursement from the other carriers and from Sepco itself to the extent of its responsibility. Thus, the instant situation is different from the usual arrangement where the insurance carrier contracts with the attorney and the attorney may look for payment only to the insurance company. Here, the court ordered, and all parties necessarily assumed, that Commercial Union was contracting with the defense team not only on its own behalf, but also on behalf of the other carriers and Sepco in proportion to the ultimate responsibility of each.

It is true that the district court's 1984 administrative order contemplated that Sepco would have a pro-rata responsibility for defense costs because it was self-insured for part of the relevant time, rather than because the court then foresaw that one of the several insurance companies would later become insolvent. However, in its June 1989 opinion, the district court construed its previous order as contemplating that Sepco was responsible for defense costs for which the bankrupt Mission was primarily responsible: "This court has already ruled that Sepco will be responsible pro rata for all losses during any period it is uninsured, whether for judgments or expenses of defense." R7–456 at 9. The 1989 opinion held that Commercial Union's payments of defense costs were merely "conditional advancements," subject to the prearranged reimbursements from the other carriers and Sepco.

 The district court's 1989 construction of its own earlier order is properly accorded deference on appeal. *See Alabama Nursing Home Ass'n v. Harris*, 617 F.2d 385, 388 (5th Cir.1980).[4] That interpretation is supported by the language of the 1984 order making Sepco responsible for defense costs "for the time during which it lacked insurance coverage." It is also supported by the emphasis in that opinion to the effect that Commercial Union (and each of the several carriers) should be required to bear the defense costs attributable to the period of its coverage, and should not be required "to defend a suit involving exposure unquestionably outside the coverage period." R3–264 at 6. The position advanced by AIGA on this appeal would mean that Commercial Union would be required to provide defense for exposure unquestionably outside of its coverage, i.e., the coverage originally undertaken by Mission. We conclude that the district court's interpretation of its previous order is reasonable.[5]

---

4. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

5. Similarly, cases such as *E.L. White, Inc. v. City of Huntington Beach*, 138 Cal.App.3d 366, 187 Cal.Rptr. 879 (1982), provide no support for AIGA's position. In that case, after White and Huntington Beach were held liable in a wrongful death case and White's insurer, Royal Globe, reimbursed White, Royal Globe and White sought indemnification from Huntington Beach. After Huntington Beach's insurer became insolvent, the California Insurance Guaranty Associ-

On the peculiar facts of this case, we conclude that Sepco was ultimately responsible for defense costs for the September 1978 to September 1979 period pursuant to the court-ordered administrative arrangement. Since the district court properly held that Sepco was liable, and since we have already concluded that AIGA is liable if Sepco is liable, it follows that the district court appropriately imposed liability on AIGA.

For the foregoing reason, the judgment of the district court is

AFFIRMED.

ation filed for a declaratory and injunctive order that they were not liable to Royal Globe, which was subrogated to White. Construing a code section identical to § 27–42–5(4), the court held that Royal Globe did not present a claim covered by the state's guaranty association act because the act specifically excluded payments to insurers. However, unlike the insurer in *Huntington Beach,* Commercial Union had no insurance in effect to cover the relevant claims, i.e., September 1, 1978, to September 1, 1979. The policy behind the Act's definition of covered claims is to prevent recovery from AIGA where any other insurance is available, but that policy does not permit AIGA to use the fortuity of the district court order here to shift the loss to another carrier when that loss is unquestionably outside the coverage of the other carrier.