531 N.W.2d 217 (1995)
247 Neb. 900
The NEBRASKA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, Appellee,
v.
Jerry DOBIAS and Anne Dobias, Husband and Wife, and Pam Dobias, an Individual, Appellants, and
John Thomas, an Individual, Appellee.
No. S-93-962.
Supreme Court of Nebraska.
May 5, 1995.
*218 John Thomas and Gregory M. Neuhaus, for appellants.
Susan Kubert Sapp, of Cline, Williams, Wright, Johnson & Oldfather, for appellee Neb. Life & Health.
WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, and CONNOLLY, JJ.
CAPORALE, Justice.

I. STATEMENT OF CASE
In this declaratory judgment action, the defendants-appellants, Jerry Dobias; his wife, Anne Dobias; and their daughter, Pam Dobias, and the defendant-appellee, their attorney, John Thomas, challenge the summary judgment entered by the district court in favor of the plaintiff-appellee, The Nebraska *219 Life and Health Insurance Guaranty Association, determining that the association is not obligated to pay the interest, costs, and attorney fees awarded the Dobiases on a judgment entered in their favor in another case. The brief filed in the Nebraska Court of Appeals asserts that the district court erred in concluding that the language of the Nebraska Life and Health Insurance Guaranty Association Act, Neb.Rev.Stat. §§ 44-2701 through 44-2720 (Reissue 1993), precludes such payment. Under our authority to regulate the caseloads of the two appellate courts, we, on our own motion, removed the matter to this court. We now affirm the judgment of the district court.

II. SCOPE OF REVIEW
Whether a declaratory judgment action is treated as an action at law or one in equity is determined by the nature of the dispute. VRT, Inc. v. Dutton-Lainson Co., 247 Neb. 845, 530 N.W.2d 619 (1995). As resolution of the dispute here rests upon the interpretation of statutory language, the questions presented are matters of law, in connection with which we have an obligation to reach an independent conclusion irrespective of the determination made by the court below. See Rust v. Buckler, 247 Neb. 852, 530 N.W.2d 630 (1995).

III. FACTS AND CONTENTIONS
The Dobiases were insured under a health insurance policy issued by Service Life Insurance Company of Omaha. After our determination in Dobias v. Service Life Ins. Co., 238 Neb. 87, 469 N.W.2d 143 (1991), that the expenses incurred as the result of the daughter's injuries and which Service Life had refused to pay were covered under the policy, the Dobiases obtained a judgment against Service Life in the amount of $31,462.23 for the covered expenses, plus $9,609.34 for interest, $494.56 for costs, and $13,748.48 for an attorney fee (a total of $55,314.61).
Before payment of the judgment, Service Life became Omaha Life Insurance Company and, as such, requested and obtained approval of a bulk reinsurance contract under which Legacy Life Insurance Company, a Nebraska insurance corporation, assumed and reinsured Omaha Life's business.
Legacy Life thereafter became insolvent and was ordered dissolved. As of the summary judgment hearing, the liquidation of Legacy Life had not been completed, and the liquidator had neither denied nor objected to the claim for payment of all sums awarded which the Dobiases presented to the liquidator. The claim before the liquidator, however, is not before us. What is before us is the claim the Dobiases filed with the association for $55,314.61, representing the total of the sums the association had previously been awarded against Service Life. The association caused payment to the Dobiases in the amount of $31,462.33 but has refused to cause payment of the remaining sums, asserting that it is prohibited from doing so by statute.
The Dobiases urge that as interest, costs, and attorney fees were awarded pursuant to law incident to the judgment resulting from their successful prosecution of an action against their insurer, the association is obligated to cause payment of said items to them.

IV. ANALYSIS
The association's obligation under the act being the issue before us, we recall that when asked to interpret a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. Arizona Motor Speedway v. Hoppe, 244 Neb. 316, 506 N.W.2d 699 (1993). To determine the legislative intent of a statute, a court generally considers the subject matter of the whole act, as well as the particular topic of the statute containing the questioned language. Anderson v. Peterson, 221 Neb. 149, 375 N.W.2d 901 (1985).
The stated purpose of the act is to protect resident policyowners and insureds against the failure of an insolvent or financially impaired insurer to perform its contractual obligations and to assist in the detection and prevention of insurer insolvencies. Section 44-2701. The funds required to carry out *220 the powers and duties of the association are obtained by assessments levied against member insurers. § 44-2708. In determining premium rates and policyowner dividends, member insurers may consider the amount reasonably necessary to meet their assessment obligations under the act. § 44-2708(7). Every insurance company transacting business in Nebraska pays a tax consisting of a percentage of the gross amount of direct writing premiums received by the company during the preceding calendar year. Neb.Rev.Stat. § 77-908 (Cum.Supp.1994).
The act applies to health insurance policies. § 44-2703. If a domestic health insurer is insolvent, the association is, subject to the approval of the director, to "[a]ssure payment of the contractual obligations of the insolvent insurer to residents." § 44-2707(3)(b). "Contractual obligation" is defined as "any obligation under a policy or contract or portion of such policy or contract for which coverage is provided under § 44-2703." Section 44-2702(4). The act is to be construed liberally "to effect the purposes enumerated in section 44-2701 which shall constitute an aid and guide to interpretation." § 44-2704.
We have not heretofore been called upon to determine whether under the act's definition of contractual obligation the association is obliged to pay interest, costs, or attorney fees awarded pursuant to law on a judgment against an insolvent insurer.
However, a review of the decisions of other jurisdictions reveals that the majority of decisions which have considered the issue under statutes similar to ours holds that a guarantor such as the association is not obligated to pay such items. This is so because such a guarantor is not the legal successor of the insolvent insurer. City of Greensboro v. Reserve Insurance Co., 70 N.C.App. 651, 321 S.E.2d 232 (1984). Rather, as a statutory creation, the guarantor is only liable to the extent provided by the statute creating the guarantor. Virginia Prop. and Cas. Ins. v. Int'l Ins., 238 Va. 702, 385 S.E.2d 614 (1989); Saylin v. Cal. Ins. Guarantee Ass'n., 179 Cal.App.3d 256, 224 Cal.Rptr. 493 (1986); City of Greensboro, supra.
For example, in Rowley v. First Columbia Life Ins., 741 F.Supp. 1259 (S.D.Miss.1989), the court held that, under a statute defining "contractual obligation" as any obligation under covered policies, the guarantor was not liable for the portion of a default judgment representing punitive damages and attorney fees obtained against an insolvent insurer, as the items were not contractual obligations owed by the insolvent insurer. Rowley relied heavily on Crider v. Ga. Life & Health Ins., etc., 188 Ga.App. 407, 373 S.E.2d 30 (1988), a case on which the association here also places heavy reliance.
The Crider court held that the insureds of an insolvent insurance company were not entitled to recover penalties and attorney fees from the guarantor to satisfy a judgment rendered against the insurer prior to insolvency.
It is worth noting that by the time Crider was decided, the Georgia Legislature had amended the insurance guaranty statute to expressly exclude any claim or judgment for punitive damages and attorney fees associated therewith against any insolvent insurer, or the insurer's insolvency pool. However, in Colwell v. Voyager Cas. Ins. Co., 184 Ga.App. 842, 363 S.E.2d 310 (1987), the court noted the amendment and rejected the argument that claims for punitive damages and attorney fees asserted prior to the amendment would have been enforceable against the guarantor. Noting that its pre-1985 amendment decisions interpreted contractual obligations as excluding punitive damages and attorney fees, the court concluded that the legislative amendment merely made explicit that which the statutory provision had previously made only implicit. See, also, Garel v. Georgia Insurers' Insolvency Pool, 191 Ga.App. 572, 382 S.E.2d 400 (1989).
Florida Ins. Guar. Ass'n v. Price, 450 So.2d 596, 597 (Fla.App.1984), held that when an insurance company, pursuant to its contractual duty to defend the insured, incurred court costs prior to its insolvency, such costs were not "`covered claims'" within the meaning of the statute governing payment by the guarantor of covered claims under policies issued by insolvent insurers, since the *221 costs were not incurred by the insured himself. Similarly, a guarantor was not obligated to pay attorney fees incurred by the insured before the insurer became insolvent. Maguire, Ward, Maguire v. Idaho Ins. Guar., 112 Idaho 166, 730 P.2d 1086 (App.1986). Moreover, while the insured of an insolvent workers' compensation carrier was entitled to indemnification by the guarantor for the disability awards the employer would be required to pay the injured employee, the guarantor was not liable for interest on any amounts expended by the employer for the injured employee's claim. Hankins Const. v. Missouri Ins. Guar. Ass'n., 724 S.W.2d 583 (Mo.App.1986).
In City of Greensboro, supra, the court held that the guarantor was not liable for prejudgment interest even though the insolvent insurer might have been liable for such interest. The Greensboro court acknowledged that statutory provisions allowed interest to be awarded in a breach of contract action but reasoned that interest arose from statute, not the contract, noting, as mentioned earlier, that the guarantor was a statutory creation rather than a legal successor of the insolvent insurer.
Jurisdictions which have held a guarantor liable for sums awarded incident to a judgment against an insolvent insurance company have done so under statutory language different than that before us, or under policy language which specifically provided for payment of the item. E.g., Russell v. Pa. Ins. Guar. Ass'n., 339 Pa.Super. 458, 489 A.2d 251 (1985) (statute required guarantor to assume all rights, duties, and obligations of insolvent insurer); Carrier v. Hawaii Insurance Guaranty Assn., 68 Haw. 545, 721 P.2d 1236 (1986) (policy expressly provided for payment of attorney fee); Commercial Union Ins. Co. v. Sepco Corp., 918 F.2d 920 (11th Cir.1990) (statute encompassed all financial loss).
In interpreting a statute, it is our obligation, absent anything indicating to the contrary, to give the language its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. See Dillard Dept. Stores v. Polinsky, 247 Neb. 821, 530 N.W.2d 637 (1995).
Read in its plain and ordinary sense, the language of §§ 44-2702(4) and 44-2707(3)(b) limits the association's liability to those obligations of Legacy Life which arose under the policy Legacy Life issued. The Legislature's admonition that the act be liberally construed does not grant us a license to add words to its language which the Legislature itself did not provide. The language of the foregoing statutes does not encompass liability of an insolvent insurer arising under law rather than under the provisions of the policy such insurer issued. It is not within the province of the courts to read a meaning into a statute that is not there, nor to read anything direct and plain out of a statute. Rust v. Buckler, 247 Neb. 852, 530 N.W.2d 630 (1995); Dillard Dept. Stores, supra.

V. JUDGMENT
Consequently, as noted in part I, the judgment of the district court must be and hereby is affirmed.
AFFIRMED.
WRIGHT, J., not participating.
WHITE, Chief Justice, dissenting.
I dissent. The majority holds that The Nebraska Life and Health Insurance Guaranty Association is not obligated to pay the interest, costs, and attorney fees awarded in this case; that the plain language contained in Neb.Rev.Stat. §§ 44-2702(4) and 44-2707(3)(b) (Reissue 1993) does not cover interest, costs, and attorney fees.
In general, statutes in existence at the time the contract was made become part and parcel of the contract as if set forth therein. In re Estate of Peterson, 221 Neb. 792, 381 N.W.2d 109 (1986). See, also, Haakinson & Beaty Co. v. Inland Ins. Co., 216 Neb. 426, 344 N.W.2d 454 (1984) (every law affecting a contract is read into the contract and becomes part of the contract); Bickford v. Board of Ed. of Sch. Dist. # 82, 214 Neb. 642, 336 N.W.2d 73 (1983) (contracts include all applicable statutes, whether specifically mentioned or not).
*222 Specifically, statutes which affect insurance policies and which are in effect at the time contracts for insurance policies are made become part and parcel of the insurance policy. Protective Fire & Cas. Co. v. Cornelius, 176 Neb. 75, 125 N.W.2d 179 (1963). See, Burstein v. State Mutual Life Assurance Co., 140 Neb. 624, 1 N.W.2d 115 (1941); Reinsch v. Pacific Mutual Life Ins. Co., 140 Neb. 225, 299 N.W. 632 (1941); Kelly v. Prudential Ins. Co., 130 Neb. 873, 266 N.W. 757 (1936). We held in State Farm Mut. Auto Ins. Co. v. Fitzgerald, 214 Neb. 226, 334 N.W.2d 168 (1983), that we must look beyond the terms of the insurance policy and examine the laws in effect which formed part of the policy as if the laws were expressly referred to in the policy.
In the case now before us, Neb.Rev.Stat. § 45-104 (Reissue 1993) provides that "[u]nless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing...." This statute was in effect at the time the Dobiases bought the insurance policy. The statute affects the insurance policy and, by lack of a contractual provision otherwise changing the interest rate, clearly becomes part of the insurance policy. Neb.Rev.Stat. § 44-359 (Reissue 1993) allows an insured who successfully brings an action on an insurance policy to recover attorney fees to be taxed as costs. That statute was also in effect at the time the Dobiases bought the insurance policy. Section 44-359 clearly affects the insurance policy and also becomes part of the insurance policy.
Clearly, then, the insurer was obligated under its contract with the insured and the applicable statutes to pay interest and attorney fees. As the insurer was obligated to pay under the contract, so is the guaranty association.
FAHRNBRUCH, J., joins in this dissent.