REQUESTED BY: Mary Harding Executive Director, The Nebraska Environmental Trust
On November 17, 2004, you requested a formal opinion from the Attorney General's Office regarding (1) whether the Nebraska Environmental Trust Board (hereinafter "Trust Board") may invest the Nebraska Environmental Endowment Fund (hereinafter "Endowment Fund") in a portfolio which contains investments which may return capital gains or dividends; and (2) whether the Trust Board may allocate earnings of the Endowment Fund which are not interest income, but instead are capital gains or dividends, pursuant to Neb. Rev. Stat. § 81-15,174.01 (Cum. Supp, 2002). For the reasons set forth below, we conclude that (1) the Endowment Fund may be invested in a portfolio which contains investments which may return capital gains or dividends; and (2) the Trust Board may allocate earnings of the Endowment Fund which are not interest income, but instead are capital gains or dividends.
The Nebraska Environmental Endowment Fund may be invested in a portfolio which contains investments which may return capital gains or dividends. Pursuant to Neb. Rev. Stat. § 81-15,174.01, "[a]ny money in the [Endowment Fund] available for investment shall be invested by the state investment officer pursuant to the Nebraska Capital Expansion Act and the Nebraska State Funds Investment Act."
The Nebraska Capital Expansion Act provides for deposits into commercial banking channels and capital stock financial institution or qualifying mutual financial institution channels that return only interest income, not capital gains or dividends, and thus is not relevant to your questions. Neb. Rev. Stat. §§ 72-1261 through 72-1269 (Reissue 2003).
The Nebraska State Funds Investment Act, however, does provide for the investment of funds in a diversified portfolio which contains investments that may return capital gains or dividends. Neb. Rev. Stat. §§ 72-1237 through 72-1260 (Reissue 2003).
The Nebraska Investment Council is governed, in part, by the "prudent man standard," as set forth by the Legislature.
Members of the Nebraska Investment Council, which invests State funds pursuant to the Nebraska State Funds Investment Act, shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims by diversifying the investments of the assets of. . . state funds so as to minimize risk of large losses, unless in light of such circumstances it is clearly prudent not to do so. Neb. Rev. Stat. § 72-1239.01(3).
Pursuant to the investment policies established by the Nebraska Investment Council, which are written with this prudent man standard in mind, the Investment Council has authorized investments in diversified portfolios and has specifically allowed other endowment funds to be invested in funds that return capital gains and dividends. See, Nebraska Investment Council Policy for Political Subdivisions, amended September 27, 2004; Cultural Preservation Endowment Fund Investment Policy Statement, amended September 27, 2004; General Endowment Funds Investment Policy Statement, amended September 27, 2004.
The prudent man standard and the Investment Council's investment policy statements allow the Nebraska Investment Council to authorize investments that they deem proper for the funds of the state, which may include those that return capital gains and dividends.
Therefore, as the Endowment Fund may be invested pursuant to the Nebraska State Funds Investment Act, the Endowment Fund is not limited to investment in only those vehicles which return interest income, but also may be invested in investments which may return capital gains or dividends under the authority of the Nebraska Investment Council.
The Trust Board may allocate earnings of the Endowment Fund which are not interest income, but instead are capital gains or dividends Pursuant to Neb. Rev. Stat. § 81-15,174.01, "[a]ny interest income earned by the Nebraska Environmental Endowment Fund shall be available for allocation by the board as provided in section 81-15,175."
Neb. Rev. Stat. § 72-1248 (Reissue 2003) of the Nebraska State Funds Investment Act provides that "Interest, premium, and other income received from investments pursuant to sections 72-1244 and 72-1267 shall be credited to the fund from which the investment was made except as otherwise provided by law."
Neb. Rev. Stat. § 72-1248 states that investment income shall be credited back to the fund from which the investment was made, in this case, the Endowment, Fund, and Neb. Rev. Stat. § 81-15,174.01 specifies that interest income shall be available for allocation by the Trust Board. However, the relevant statute does not give guidance to the Trust Board for handling investment income that is not interest. For this reason, we believe the statute to be vague in this respect.
When a statute is vague, the legislative history of the statute may be reviewed for the purpose of discovering the intent of the Legislature. North Star Lodge No. 227 v. City of Lincoln, 212 Neb. 236, 322 N.W.2d 419
(1982).
We also keep in mind the general rules of statutory construction. In ascertaining the meaning of a statute, courts in Nebraska will determine and give effect to the purpose and intent of the Legislature as determined from the entire language of the statute considered in its plain, ordinary and popular sense. Omaha Public Power District v. Nebraska Dept. of Revenue, 248 Neb. 518, 537 N.W.2d 312 (1995); Nebraska Life and Health Ins. Guarantee Association v. Dobias, 247 Neb. 900, 531 N.W.2d 217
(1995). Courts will also look to a statute's purpose and give it a reasonable construction that best achieves that purpose, rather than a construction which would defeat that purpose. Solar Motors, Inc. v. First National Bank of Chadron, 249 Neb. 758, 545 N.W.2d 714 (1996). Finally, courts will place a sensible construction upon a statute to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent. Bayer v. Father Flanagan's Boys' Home, 219 Neb. 824, 366 N.W.2d 760 (1985).
We believe the legislature intended to allow for the use of "investment income" instead of simply "interest income" for allocation by the Trust Board. We read Neb. Rev. Stat. § 81-15,174.01 together with Neb. Rev. Stat. § 72-1248, and the Legislative History of Neb. Rev. Stat §81-15,174.01, and find that the Endowment Fund is not limited to only be invested in those type of investments that return only interest income, but in a range of investment opportunities, including those that return capital gains or dividends, or other such income. The legislature intended the Trust Board to invest the principle from the Endowment Fund and use the income from those investments for its allocations, whether it be interest income, or capital gains or dividends.
The Endowment Fund is to be invested and administered as any other trust fund is in the State. The Nebraska State Funds Investment Act allows the Endowment Fund to be invested in a portfolio that includes vehicles which return capital gains or dividends, and those capital gains and dividends are available for allocation by the Trust Board, just as interest income is available.
 Conclusion
Based on the above, it is our opinion, pursuant to Neb. Rev. Stat. §81-15,174.01 and the provisions of the Nebraska State Funds Investment Act that the Endowment Fund may be invested by the Trust Board in investments that return interest income, capital gains, or dividends; and that the Trust Board may allocate earnings of the Endowment Fund that are interest income, capital gains, or dividends.
Sincerely,
 JON BRUNING Attorney General
 Natalee J. Hart Assistant Attorney General
APPROVED: