PIERCE, Justice,
dissenting:
¶ 23. This is a case of first impression for this Court. Never before has this Court been presented a situation in which a self-insured and a direct insurer became insolvent on the same claim involving the same transaction. The Mississippi Insurance Guaranty Association (“MIGA”) and the Mississippi Workers’ Compensation Individual Self-insurer Guaranty Association (“SIGA”) are legal entities with similar duties and obligations. In fact, each’s respective statute mimics the other but for some select wording in each statute.
¶ 24. Throughout this case, words “claimant” and “covered claim” were often used. Yet, each word has a specific meaning as announced by both SIGA’s and MIGA’s respective statutes. SIGA’s statute does not define “claimant,”[19] but defines “covered claim” as:
“Covered claim” means an unpaid claim upon which compensation or medical is payable by an individual self-insurer or a group self-insurer under the Worker’s Compensation Law.[20]
MIGA’s statute defines “claimant” and “covered claim” as:
*6 “Claimant” means any insured making a first-party claim or any person instituting a liability claim, provided that no person who is an affiliate of the insolvent insurer may be a claimant.[21] “Covered Claim” means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer.... “Covered Claim” shall not include any amount awarded as punitive or exemplary damages; or sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise and shall preclude recovery thereof from the insured of any insolvent carrier to the extent of the policy limits.[22]
¶ 25. Looking at SIGA’s statute specifically, it commands that SIGA must “have all rights, duties and obligations” of the insolvent self-insurer — B.C. Rogers — “as if such self-insurer were not in default.”[23] Thus, it seems logical that SIGA should be able to enforce whatever rights, duties, and obligations B.C. Rogers possessed. MIGA admitted that B.C. Rogers could bring a claim under the excess policy held with Reliance, but that SIGA could not. Yet, MIGA provided no authority to support that assertion. Rather, MIGA insists that SIGA does not meet the requirements listed in MIGA’s statute to be paid.
¶ 26. The majority opinion favors MIGA’s statute, yet casts aside SIGA’s statute. Quite frankly, the majority fails to recognize the importance of SIGA’s statute when aligned with MIGA’s. As mentioned previously, never before has a self-insured and a direct insurer become insolvent on the same claim involving the same transaction. Therefore, each respective statute must be applied accordingly.
¶ 27. The majority is correct that, “[t]he Legislature created MIGA to ‘provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders, because of the insolvency of an insurer....’”[24] This Court must “liberally” construe the MIGA statutes “to effect the purpose under Section 83-23-103, which shall constitute as an aid and guide to interpretation.”[25]
¶ 28. The majoi’ity reasons that “to obligate MIGA to pay SIGA, SIGA must be a claimant or policyholder with an unpaid claim.”[26] MIGA’s statute defines “claimant” as “any insured” or “any person instituting a liability claim.” The majority ignores SIGA’s statute that commands that it shall:
Be deemed the self-insurer to the extent of obligations on its covered claims and to such extent shall have the rights, duties and obligations of the individual self-insurer in default or insolvent group self-insurer in default as if such self-insurer were not in default.[27]
*7 SIGA’s statute provides for the same liberal reading and application as MIGA’s,[28] and one statute should not be given any more effect than the other..
¶ 29. Reading SIGA’s statute and reconciling it with MIGA’s, SIGA could be considered both a claimant and a policyholder. First, SIGA’s statute allows it to cloak itself as the self-insured, entitling it to the same coverage as B.C. Rogers under the Reliance policy. Because B.C. Rogers would be treated as “any insured making a first-party claim,” SIGA should be afforded similar treatment. Secondly, SIGA could also be considered a policyholder, because SIGA’s statute allows it to possess the rights, duties and obligations of the individual self-insurer in default. Ultimately, SIGA paid out money on B.C. Rogers’s behalf, and it wants that money to be returned through an insurance policy B.C. Rogers purchased to cover its liability-
11 30. We must be mindful of what took place. B.C. Rogers was a self-insured employer up to $225,000. To cover any liability on workers’ compensation claims in excess of $225,000, B.C. Rogers purchased a policy with Reliance National Indemnity Company. One of B.C. Rogers’s employees, Warren, was injured during his employment. As a result, B.C. Rogers paid $225,000, and then filed a claim with Reliance for the excess amount. Reliance paid $129,205.73 before becoming insolvent. Because of Reliance’s insolvency, B.C. Rogers began repaying Warren’s claim, and paid $167,419.53. But then, B.C. Rogers became insolvent, and SIGA assumed responsibility, paying $111,739.78 to satisfy the rest of Warren’s claim against B.C. Rogers. Therefore, a total of $279,159.31 was paid by B.C. Rogers and SIGA, when that amount should have been paid by Reliance under the policy B.C. Rogers purchased to cover its excess liability.
¶ 31. Interestingly, the majority admits that SIGA inherited the rights and obligations of B.C. Rogers, but found that B.C. Rogers did not possess any outstanding rights or obligations, even though Reliance only partially had met its contractual duty under the policy with B.C. Rogers.[29] The majority goes further and reasons that if B.C. Rogers were not insolvent, it would have no right of reimbursement for SIGA’s payment to Warren, and thus, SIGA cannot be reimbursed either.[30] But this is faulty logic, because the majority fails to recognize that if B.C. Rogers were not insolvent, SIGA would not have had to pay anything to anyone.
¶ 32. Of note, MIGA admitted in its brief that B.C. Rogers could bring a claim under the excess policy held with Reliance, but that SIGA could not do so without providing authority as to why. The majority fails to recognize MIGA’s admission. And I am unable to reconcile how B.C. Rogers could bring a claim, yet SIGA cannot, even though all agree that SIGA inherits the rights, duties, and obligations of the defaulted self-insurer.
¶ 33. Additionally, the majority states that SIGA has only one avenue for reimbursement in that it can recover only from the self-insurer in default.[31] However, Mississippi Code Section 71-3-169(2) is not as absolute as the majority characterizes. Section 71-3-169(2) clearly uses the word “may.” “May” is not an absolute term, and thus, the statute is not the only route that SIGA can follow to obtain reimbursement.
*8 ¶ 34. During oral argument, Presiding Justice Dickinson asked if the excess claim was the claim that is unpaid. The answer was, emphatically, “yes.” B.C. Rogers’s claim against Reliance remains unpaid, because $279,159.31 had to be paid once Reliance became insolvent. Now, both B.C. Rogers and Reliance are insolvent, placing SIGA in the shoes of B.C. Rogers, and MIGA in the shoes of Reliance. Since Reliance would be obligated to pay B.C. Rogers, MIGA should be obligated to pay SIGA, irrespective of SIGA’s reasons for seeking reimbursement. We must remember, SIGA’s statute permits such action.[32]
¶ 35. SIGA’s statute commands that SIGA be treated with the same pleasantries of the self-insurer as if that self-insurer were not in default.[33] If we read that statute under its plain meaning, then SIGA’s statute transforms it into B.C. Rogers, allowing SIGA to be reimbursed by MIGA. And therefore, here, “an insolvent insurer’s shoes are” a perfect fit.[34] If this Court subtracts from SIGA’s statute its right to be treated as the self-insurer, what authority does SIGA have to possess the rights, duties, and obligations of the self-insurer as its statute commands going forward? But of most importance, the majority admits that SIGA inherits the rights and obligations of B.C. Rogers.[35] Consequently, SIGA is entitled to that to which B.C. Rogers would be entitled — a claim against MIGA because of Reliance’s insolvency.
¶ 36. The questions to be answered are: 1) what is the claim; and 2) who is the claimant? The “claim” is that which B.C. Rogers would have received under its policy with Reliance. MIGA misconstrued who the claimant is, as it reasoned that Warren was the “claimant.” Although it is true that Warren is a claimant, he is, unmistakably, a workers’ compensation claimant, not a “claimant” with regard to the policy B.C. Rogers had with Reliance. MIGA’s statute defines “claimant” as “any insured making a first-party claim or any person instituting a liability claim....”[36] Therefore, Warren cannot be a “claimant” in the manner MIGA suggested, because Warren cannot make a claim on B.C. Rogers’s policy with Reliance. Instead, Warren could only be a “claimant” in that he sought payment from an insolvent B.C. Rogers.
¶ 37. And the issue to be decided now is, who is the “claimant” with respect to the Reliance policy held and purchased by B.C. Rogers? The “claimant,” as defined by MIGA’s own statute, was and is B.C. Rogers. B.C. Rogers owned the policy. B.C. Rogers was liable to Warren in excess of $225,000, and thus, B.C. Rogers made a claim on its policy with Reliance. Due to B.C. Rogers’s insolvency, SIGA is now cloaked with B.C. Rogers’s rights, duties, and obligations.[37] Therefore, SIGA inherits the ability to be the “claimant” under MIGA’s statutory scheme up to the *9 amount it paid on B.C. Rogers’s behalf, not to exceed $300,000.[38]
¶ 38. After reviewing caselaw in other jurisdictions, we do not find any case directly on point with the issues presented here. However, in other states, it seems to be an emerging trend NOT to expand the language of a guaranty association statute beyond that of the statute.[39] Specifically, Pennsylvania, Nebraska, California, Virginia, and Wyoming all have held that a guaranty association does not step into the shoes of the self-insured except as to the extent provided for within the statute affecting that association.[40] But Mississippi is different from those states, and here, we are not expanding SIGA’s statute beyond its respective language, because SIGA’s statute specifically allows it to assume the rights, duties, and obligations of a self-insurer as though no default had occurred.[41]
¶ 39. However, in one interesting case from Pennsylvania from 2009 — General Reinsurance Corporation v. American Bankers Insurance Company of Florida,[42] the Pennsylvania court decided an issue regarding our own MIGA.[43] There, MIGA brought an interpleader action, seeking a determination as to whether a statutory liquidator of a workers’ compensation insurer or MIGA was owed $2,488,336.19 pursuant to a reinsurance agreement between the reinsurer and the liquidated workers’ compensation insurer.[44] The court found that MIGA could not stand in the shoes of another with regard to the reinsurance proceeds subject to the inter-pleader complaint.[45] Here, it seems that MIGA attempts to employ that same argument, but to an entirely different set of circumstances. At this juncture, we have a self-insurer who would lay claim to proceeds from an insurance policy but for insolvency, and a statute which specifically allows a guaranty association to step into the shoes of the insolvent self-insurer as if it were not in default. Ultimately, the question turns on how broadly this Court will construe SIGA’s statute in regard to “rights, duties and obligations.”
¶40. B.C. Rogers’s claim on its policy with Reliance remains unsatisfied. Otherwise, SIGA would have no right to enforce the claim on B.C. Rogers’s behalf. We must remember that B.C. Rogers purchased a policy with Reliance to cover all its liability on workers’ compensation claims in excess of $225,000. B.C. Rogers’s claim has been only partially paid by Reliance, as Reliance paid $129,205.73 before becoming insolvent, leaving $279,159.31 to be paid in order to satisfy Warren’s workers’ compensation claim. SIGA stated at oral argument that neither it nor B.C. Rogers had received anything on the Reliance policy, but as shown above, *10 B.C. Rogers did receive a partial amount from Reliance. Nevertheless, SIGA seeks to recoup what it was obligated to pay on B.C. Rogers’s behalf because of Reliance’s insolvency. Statutorily, MIGA is to step into the shoes of Reliance and pay the liabilities of Reliance.[46] Yet here, MIGA does not desire to wear those shoes, even though they are a perfect fit.
¶ 41. The majority concludes by characterizing SIGA’s attempt at reimbursement as a novation.[47] Although the majority properly defines novation, it still fails to recognize what SIGA’s statute allows. SIGA’s statute specifically directs it to stand in the shoes of the self-insurer as if that self-insurer had never defaulted. MIGA conceded that B.C. Rogers may have an unpaid claim, but claimed that, since SIGA is making a claim for itself, MIGA is not obligated to pay. This logic is faulty and allows MIGA to escape the liability it would have had to pay B.C. Rogers. If B.C. Rogers had not become insolvent and SIGA was out of the picture, MIGA would have had to pay B.C. Rogers on the Reliance claim.[48] Accordingly, MIGA should have to pay SIGA, and the decision of the trial court should be affirmed.
KITCHENS, J., JOINS THIS OPINION.

. Regardless, SIGA's definition, even if its statute provided one, is irrelevant to this case, as it is "claimant” under MIGA’s statute that bears directly upon this case.

. Miss.Code Ann. § 71-3-157(e) (Rev.2011).

. Miss.Code Ann. § 83-23-109(c) (Rev.2011).

. Miss.Code Ann. § 83-23-109(f) (Rev.2011).

. Miss.Code Ann. § 71-3-163(1 )(b) (Rev.2011).

. Maj. Op. ¶ 11; see also Miss.Code Ann. § 83-12-103 (Rev.2011).

. Miss.Code Ann. § 83-23-107 (Rev.2011).

. Maj. Op. ¶ 13.

. Miss.Code Ann. § 71-3-163(1)(b) (Rev.2011) (emphasis added).

. Miss.Code Ann. § 71-3-155 (Rev.2011).

. Maj. Op. ¶ 16.

. Maj. Op. ¶ 16.

. Maj. Op. ¶ 16.

. See Miss.Code Ann. § 71-3-163(1)(b).

. Id.

. Maj. Op. ¶ 14; but see Miss. Ins. Guar. Ass'n v. Blakeney, 54 So.3d 203, 206 (Miss.2011) (finding that insolvent insurer's shoes did not fit because the insolvent insurer's duties and obligations passed to MIGA under one subsection of the statute but were limited under another subsection that stated that MIGA may pay covered claims only to the extent of the association's obligation).

. Maj. Op. ¶ 16.

. Miss.Code Ann. § 83-23-109(c) (Rev.2011).

. See Miss.Code Ann. § 71-3-163(1 )(b) (Rev.2011).

. See Miss.Code Ann. § 83-23-115(1)(a)(iii) (Rev.2011).

. See Wyoming Med. Ctr., Inc. v. Ins. Guar. Assn, 225 P.3d 1061, 1067-68 (Wyo.2010).

. See T & N PLC v. Pennsylvania Ins. Guar. Ass’n, 800 F.Supp. 1259, 1263 (E.D.Pa.1992); Nebraska Life & Health Ins. Guar. Ass’n v. Dobias, 247 Neb. 900, 531 N.W.2d 217, 220 (1995); Saylin v. Cal. Ins. Guar. Ass’n, 179 Cal.App.3d 256, 224 Cal.Rptr. 493, 497 (1986); Virginia Property & Casualty Ins. Guar. Ass’n v. International Ins. Co., 238 Va. 702, 385 S.E.2d 614, 616 (1989); Wyoming Med. Ctr., Inc. v. Ins. Guar. Ass’n, 225 P.3d 1061, 1067-68 (Wyo.2010).

. See Miss.Code Ann. § 71-3-163(1 )(b) (Rev.2011).

. Gen. Reinsurance Corp. v. Am. Bankers Ins. Co. of Fla., 996 A.2d 26 (2009).

. Id.

. Id. at 28.

. Id. at 36.

. See Miss.Code Ann. § 83-23-115(1 )(a) (Rev.2011).

. Maj. Op. ¶ 19.

. See Miss.Code Ann. § 83-23-115(1)(a) (Rev.2011).