STATE OF NEBRASKA, APPELLANT, V. ROBERT ATKINS, APPELLEE.
549 N.W.2d 159

Filed June 14, 1996. No. S-95-299.

Kent D. Turnbull, Lincoln County Attorney, for appellant.

Robert P. Lindemeier, Lincoln County Public Defender, for appellee.

Don Stenberg, Attorney General, and Laurie Smith Camp for State of Nebraska regarding constitutional issue.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Taking exception to the district court's affirmance of the county court's order concerning the amount by which the jail sentence the county court imposed upon the defendant-appellee, Robert Atkins, was to be reduced for good time, the plaintiff-appellant, State of Nebraska, perfected this appeal under the provisions of Neb. Rev. Stat. §§ 24-1106 and 29-2315.01 (Reissue 1995).

## FACTS

In accordance with Atkins' plea, the county court found him guilty of having been a minor unlawfully in possession of alcohol and on May 17, 1994, sentenced him to 10 days in the county jail. Complying with a "General Order" of the district court, the county court further ordered that Atkins be awarded a " 'Good Time' " reduction of the sentence on a "day for day basis," in the same manner as good· time is credited to "persons similarly confined, but held under the direction of the Dept. of Corrections." The State appealed to the district court, contending that the county court's good time order was contrary to law; the district court affirmed the county court's judgment.

The resolution of this appeal is controlled by Neb. Rev. Stat. § 47-502 (Reissue 1993), which provides:

> Any person sentenced to a city or county jail shall have his or her term reduced seven days for each fourteen consecutive days during which he or she has not committed any breach of discipline or other violation of jail regulations. The reductions authorized by this section shall be granted at the end of each period of fourteen days, with such periods to run consecutively from the date of confinement following sentencing.

## SCOPE OF REVIEW

As a matter controlled by statute, we are presented with questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Interest of Rondell B.*, 249 Neb. 928, 546 N.W.2d 801 (1996).

## ANALYSIS

The district court reasoned that the language of § 47-502 is ambiguous and that unless construed so as to treat county jail inmates like their counterparts in the state prison system, the statute would infringe upon the federal equal protection rights of the former. Thus, contrary to the State's contention, the district court did not rule that § 47-502 is unconstitutional.

Nonetheless, the unique character of the district court's general order and judgment in this case requires that we undertake two separate and distinct inquiries. We must first determine whether the district court properly construed § 47-502. Then, as a separate matter, we must determine whether the proper construction of the statute violates the Equal Protection Clause.

*Statutory Construction.*

Before embarking on a study of the statutory language, we recall that a statute is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995); *State v. Melcher*, 240 Neb. 592, 483 N.W.2d 540 (1992).

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Seevers v. Potter*, 248 Neb. 621, 537 N.W.2d 505 (1995); *Proctor v. Minnesota Mut. Fire & Cas.*, 248 Neb. 289, 534 N.W.2d 326 (1995). Nor is it within the province of the courts to read a meaning into a statute that is not there, nor to read anything direct and plain out of a statute. *Nebraska Life & Health Ins. Guar. Assn. v. Dobias*, 247 Neb. 900, 531 N.W.2d 217 (1995); *Dillard Dept. Stores v. Polinsky*, 247

Neb. 821, 530 N.W.2d 637 (1995). See, also, *In re Interest of Rondell B., supra*.

Moreover, when passing on the constitutionality of a statute, a court begins with a presumption of validity, and the burden of demonstrating a constitutional defect rests with the challenger. See *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d 740 (1996).

Relying on *Williams v. Hjorth*, 230 Neb. 97, 430 N.W.2d 52 (1988), the district court found that § 47-502 was ambiguous and open to construction. In *Williams*, which concerned the interpretation of a 1984 rendition of the statute, we found the statutory language "with such periods to run consecutively from the date of confinement following sentencing" to be ambiguous and then undertook an examination of the statute's legislative history to determine the intent of the Legislature. As a result, we construed § 47-502 such as to make good time credit in the jail system applicable to time spent in jail awaiting sentencing. Because the current version of § 47-502 contains the same statutory language at issue in *Williams*, the district court concluded that the statute was ambiguous and open to judicial construction.

In doing so, the district court overlooked the controlling rule that where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *Johnson v. Holdrege Med. Clinic*, 249 Neb. 77, 541 N.W.2d 399 (1996); *Mayfield v. Allied Mut. Ins. Co.*, 231 Neb. 308, 436 N.W.2d 164 (1989); *Nelson v. Dolan*, 230 Neb. 848, 434 N.W.2d 25 (1989); *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983).

In its 1993 amendment of the version of § 47-502 at issue in *Williams*, the Legislature made only one change; it changed from 21 to 14 the number of days a city or county jail inmate had to serve before earning 7 days of good time. 1993 Neb. Laws, L.B. 113. That amendment left the statutory language construed in *Williams* intact. Accordingly, not only was there no need for the district court to turn to legislative history to ascertain the Legislature's intent, it was wrong to do so. The

Legislature had already made clear its intent by its acquiescence in our interpretation.

The other provision of § 47-502 which pertains to the amount of good time that city or county jails must provide is direct and unambiguous. It provides in part that "[a]ny person sentenced to a city or county jail shall have his or her term reduced seven days for each fourteen consecutive days during which he or she has not committed any breach of discipline or other violation of jail regulations." The plain meaning of this language is that city and county jail inmates must serve 14 consecutive days without a breach of discipline or a violation of jail regulations in order to be entitled to a 7-day sentence reduction. Because the words of the statute are plain, direct, and unambiguous, no interpretation is necessary to ascertain their meaning. *Meyers v. Meyers*, 222 Neb. 370, 383 N.W.2d 784 (1986).

Once it is understood that this court's interpretation in *Williams v. Hjorth*, 230 Neb. 97, 430 N.W.2d 52 (1988), remains viable, the meaning of the statute is clear. Good time credit is provided on the same basis for time spent in jail awaiting sentencing; that is, city and county jail inmates must serve 14 consecutive days without misconduct to earn a 7-day reduction of the sentence.

In sum, the district court erred in finding § 47-502 to be ambiguous and open to construction.

*Equal Protection.*

We next consider whether the foregoing proper construction of § 47-502 offends the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

As a general matter, the Equal Protection Clause requires the government to treat similarly situated people alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). However, the dissimilar treatment of dissimilarly situated persons does not violate equal protection rights. *Klinger v. Department of Corrections*, 31 F.3d 727 (8th Cir. 1994), *cert. denied* ____ U.S. ____, 115 S. Ct. 1177, 130 L. Ed. 2d 1130 (1995). Thus, the initial inquiry in an equal protection analysis focuses on whether one

has demonstrated that one was treated differently than others similarly situated. Absent this threshold showing, one lacks a viable equal protection claim. *Id.*

If one can make this threshold showing, the inquiry then shifts to whether the legislation at issue can survive judicial scrutiny. In cases not dealing with a fundamental right or suspect class, all that is required to sustain the legislation is that there be a rational relationship between a legitimate state interest and the statutory means selected by the Legislature to accomplish that purpose. *Porter v. Jensen,* 223 Neb. 438, 390 N.W.2d 511 (1986). The rational relationship standard, as the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause, *Dallas v. Stanglin,* 490 U.S. 19, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989), "is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective," *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 (1961). Thus, social and economic measures run afoul of the Equal Protection Clause only when the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that a court can only conclude that the Legislature's actions were irrational. *MSM Farms, Inc. v. Spire,* 927 F.2d 330 (8th Cir. 1991), *cert. denied* 502 U.S. 814, 112 S. Ct. 65, 116 L. Ed. 2d 40. See, also, *State v. Garber,* 249 Neb. 648, 545 N.W.2d 75 (1996).

In this case, we need not reach the merits of the equal protection claim because city and county jail inmates and state prison inmates are not similarly situated with respect to the provision of good time.

A similarly situated inquiry focuses on whether the challenger is similarly situated to another group for purposes of the challenged governmental action. *Klinger, supra.* The challenged governmental action here is the provision of good time. Therefore, the relevant inquiry is whether city and county jail inmates are similarly situated to state prison inmates for that purpose.

In contrast to the good time treatment afforded city and county jail inmates by § 47-502, at the relevant time, Neb. Rev. Stat. § 83-1,107 (Reissue 1994) provided that inmates in

the state prison system were entitled to a 6-month reduction of their term for every year served. For any time less than a year served, there was a pro rata reduction. Thus, state prison inmates received day-for-day good time credit; city and county jail inmates did not. (1995 Neb. Laws, L.B. 371, § 20, modifies the good time credited to state prison inmates operative July 1, 1996.)

Based on nothing more than the fact that both groups are composed of prisoners, the district court concluded that city and county jail inmates and state prison inmates are similarly situated with respect to the provision of good time. In doing so, the court ignored real differences between the two groups.

For example, inmates committed to the state prison system serve longer sentences for more serious crimes and receive the benefit of many rehabilitation programs available in the state system. See, Neb. Rev. Stat. § 28-105 (Reissue 1995); Neb. Rev. Stat. § 83-171 (Reissue 1994). State prison inmates also may receive maximum and minimum terms. Neb. Rev. Stat. § 29-2204 (Reissue 1995). Maximum terms are used to determine discharge dates, and minimum terms are used to determine parole eligibility dates. § 83-1,107. The sentence reduction provided for in § 83-1,107 applies to both terms. None of this applies to city and county jail inmates, who serve shorter sentences for less serious crimes. Neb. Rev. Stat. § 28-106 (Reissue 1995). They are ineligible for parole and have very limited access to rehabilitation programs. See Neb. Rev. Stat. §§ 83-170(3) and 83-1,110 (Reissue 1994).

Because incarceration in jail differs so greatly from incarceration in the state prison system in terms of both length of sentence and character, city and county jail inmates are not similarly situated to state prison inmates for the purposes of awarding good time. For this reason, if for no other, the provision of good time to city and county jail inmates on an unequal basis with state prison inmates does not violate equal protection rights.

## CONCLUSION

For the foregoing reasons, the State's exception is sustained.

EXCEPTION SUSTAINED.