HAROLD DECOSTE, AND IN BEHALF OF ALL WHO HAVE BEEN CHARGED PURSUANT TO WAHOO CITY ORDINANCE 1413, APPELLANT, V. CITY OF WAHOO, A MUNICIPAL CORPORATION, APPELLEE.

583 N.W. 2d 595

Filed August 21, 1998.    No. S-97-657.

Neil W. Schilke for appellant.

Charles H. Wagner and Maureen Freeman-Caddy, of Edstrom, Bromm, Lindahl, Wagner & Miller, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WHITE, C.J.

This case involves Harold DeCoste's appeal from the Saunders County District Court's order dismissing his action to (1) enjoin the City of Wahoo from enforcing ordinance No. 1413, as amended by ordinance No. 1416; (2) have those ordinances declared void as being unconstitutional and/or as exceeding the authority granted by Neb. Rev. Stat. § 19-2101 et seq. (Reissue 1997) (act); and (3) recover attorney fees and expenses pursuant to 42 U.S.C. §§ 1983 and 1988 (1994). We removed this case to our docket pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). We reverse, and remand with direction.

In January 1976, the city began to operate a landfill for solid waste disposal. In December 1989, a report based on a series of water quality tests indicated that the city's landfill was contaminating the ground water. The establishment of licensing and design requirements for existing landfills subsequently forced the city to close the landfill by October 1, 1993. In order to comply with federal and state regulations, the city was required to close the landfill with 18 inches of low-permeability cover, 6 inches of topsoil, vegetative cover, and grading.

In March 1992, after the city began to consider the costs associated with closing the landfill, the city's engineering firm projected that the closing of the landfill alone would cost $270,000. The final projected cost, including engineering fees, totaled $400,000. After considering various options, the city decided to raise $200,000 through "management fees," $100,000 through keno funds, and $100,000 through a loan

from the utility fund. The city eventually received and accepted a bid of approximately $190,000 for the closing of the landfill.

In November 1992, the city established its "management fee" plan by adopting ordinance No. 1413. The ordinance provides in pertinent part:

4-205. MANAGEMENT FEES. For the purpose of raising revenue for the management of the solid waste disposal area of the City of Wahoo, Nebraska, there is hereby established a fee to be known as a management fee which shall be levied as follows:

a. $10.00 per month per residence of the City of Wahoo and $10.00 per month per residence located outside the corporate limits of the City of Wahoo, but authorized to utilize the solid waste area of the City of Wahoo by the mayor and council thereof.

b. $20.00 per month per commercial and industrial business within the corporate limits of the City of Wahoo and $20.00 per month per non-resident commercial and industrial business authorized to utilize the solid waste area of the City of Wahoo by the mayor and council thereof.

4-206. EFFECTIVE DATE. The collection of said management fee shall commence as of December 1, 1992.

4-207. COLLECTION OF MANAGEMENT FEE. For ease of collection and payment, said management fee shall be added to the electrical statements of all appropriate electrical customers of the City of Wahoo and shall be due and payable and subject to the same terms and conditions as pertains [sic] to electrical statements of electrical customers of the City of Wahoo and in accordance with the applicable ordinances thereof. That all non-electric customers of the City of Wahoo who are to pay the management fee set forth in Section 4-205, said residences, commercial and industrial businesses, shall be sent a monthly statement for said management fees.

In addition to the purpose stated within ordinance No. 1413, a letter of explanation distributed by the city discloses that the fee was established for the purpose of raising revenue in order to pay for the costs associated with closing the city's landfill in

compliance with federal and state guidelines. The testimony in the record indicates that the city planned to collect the management fees for a period of 10 months. The city formally set August 31, *1993*, as the final date for collecting the fees; however, this limitation was not implemented until August 10, *1995*.

In December 1992, as a result of various Wahoo residents' refusing to pay the management fee, the city amended ordinance No. 1413 by passing ordinance No. 1416. Ordinance No. 1416 provided in pertinent part:

a. That the right and privilege of utilizing the City of Wahoo sold [sic] waste disposal area shall be available only to residents of the City of Wahoo, Nebraska.

b. That all residents of the City of Wahoo, Nebraska, delinquent in the payment of their management fee shall be denied the use of the City of Wahoo solid waste disposal area until said delinquent management fees have been paid in full. In furtherance of said prohibition, the Clerk of the City of Wahoo shall certify each month a listing of all residents of the City of Wahoo delinquent in the payment of their management fee and deliver said list to all entities providing a garbage hauling service for a fee in the City of Wahoo. Any said garbage haulers who continue to haul garbage of a resident of the City of Wahoo who is delinquent in the payment of their management fee, after having been so notified, shall be subject to revocation of the license issued by the City of Wahoo to said garbage hauler.

c. That the effective date of this ordinance shall be as of December 1, 1992.

On January 28, 1993, the city repealed section b of ordinance No. 1416.

As of March 27, 1997, 12 Wahoo residences and businesses continued to refuse to pay the management fee. Appellant has refused to pay the fee and continues to have an outstanding balance of $100. During oral argument, counsel for appellant indicated that appellant's refusal to pay these fees has resulted in appellant's being refused access to the city landfill. The record, however, establishes the contrary. First and foremost, appellant's own testimony reveals that he was never denied access to

the city landfill. Appellant's petition also recognizes that the city repealed section b of ordinance No. 1416 and thereby removed the city's authority to deny any person delinquent in paying his or her management fee access to the landfill or garbage removal services. Instead of denying those persons delinquent in paying their fees access to the landfill and garbage disposal services, the city council determined it would recover delinquent fees through actions filed in small claims court. The record does not reflect whether the city actually instituted any actions in small claims court.

Along with various Wahoo residents' refusing to pay the fee, the city also faced difficulty in actually applying ordinance No. 1413. By its own terms, ordinance No. 1413 requires each "residence" and "commercial or industrial business" to be charged the management fee. In order to provide an easy method for payment and collection of the management fee, the city added the fee to the electrical bills of "all appropriate electrical customers." In actuality, some Wahoo residences, such as units within a multiple-unit apartment complex, do not have an individual electrical meter and consequently do not receive an electrical bill. In practical terms, these residences could not be charged a management fee as part of an electrical bill. Even though the city planned for this contingency by providing that all "non-electric customers" required to pay the management fee would receive a monthly bill, the city still had difficulty in implementing this portion of ordinance No. 1413. This occurred because the city could not determine which residences were actually occupied and subject to the management fee. The city resolved this problem by charging any multiple-unit apartment complex or duplex with a single electrical meter as a business under ordinance No. 1413. As a result, various owners and occupiers of residences were not charged a management fee. In particular, one 66-unit apartment complex, with a single electrical meter for the entire complex, was charged as a business under ordinance No. 1413. At the same time, owners and occupiers of apartment residences with an individual electrical meter were charged as single residences under ordinance No. 1413.

On April 22, 1993, appellant filed an amended petition in Saunders County District Court in an effort to enjoin the city

from enforcing the ordinances. In *DeCoste v. City of Wahoo*, 248 Neb. 463, 534 N.W.2d 760 (1995), we reversed a Saunders County District Court's verdict in favor of appellant and remanded the cause with directions to dismiss because of counsel's failure to serve the Attorney General with a copy of the district court proceedings pursuant to Neb. Rev. Stat. § 25-21,159 (Reissue 1995).

On March 6, 1996, after instituting another action against the city, appellant filed a third amended petition, attempting, once again, to enjoin the city from enforcing the ordinances. After a bench trial, the district court found in favor of the city on all causes of action and summarily dismissed appellant's petition with prejudice. This appeal followed.

Summarized and restated, appellant asserts the district court erred in determining (1) the act authorized or created an implied power for the city to enact ordinance No. 1413, as amended by ordinance No. 1416; (2) the act authorized the city to deny persons delinquent in paying the fee access to the landfill and garbage services; (3) the ordinances do not violate the equal protection provisions of the Nebraska and U.S. Constitutions; (4) the ordinances do not violate the due process provisions of the Nebraska and U.S. Constitutions; (5) appellant was not entitled to attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988; and (6) the common fund doctrine does not apply in this case.

An action for declaratory judgment is sui generis, and whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Foote Clinic, Inc. v. City of Hastings*, 254 Neb. 792, 580 N.W.2d 81 (1998); *Main Street Movies v. Wellman*, 251 Neb. 367, 557 N.W.2d 641 (1997). The constitutionality of an ordinance is a question of law. *State v. Champoux*, 252 Neb. 769, 566 N.W.2d 763 (1997). In connection with questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997).

Appellant asserts that if the ordinances enacted by the city are authorized by § 19-2101 et seq., such statutes violate article VIII, § 1, of the Nebraska Constitution. Appellant's brief, however, does not assign as error the district court's failure to find

that the act violates article VIII, § 1, of the Nebraska Constitution. As a result, this issue will not be considered. Errors which are argued but not assigned will not be considered by an appellate court. *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998); *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (1997).

Appellant's third and fourth assignments of error set forth his assertion that the trial court erred in failing to determine that ordinances Nos. 1413 and 1416 are void as violating the due process and equal protection provisions of the Nebraska and U.S. Constitutions. We have established a general rule that we will not make a determination on the constitutionality of a statute or ordinance if the issue may be disposed of on other grounds. See, *State v. Wenzel*, 215 Neb. 395, 338 N.W.2d 772 (1983); *State Dept. of Motor Vehicles v. Lessert*, 188 Neb. 243, 196 N.W.2d 166 (1972). Appellant's first and second assignments of error set forth his assertion that ordinances Nos. 1413 and 1416 are void as exceeding the authority granted by the act. However, appellant's fifth assigned error sets forth his assertion that the trial court erred in determining that appellant was not deprived of a constitutional right and that, as a result, the trial court erred in failing to award attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988. Regardless of whether we determine that the ordinances are void as exceeding the authority granted by the act, the court must inevitably determine whether ordinances Nos. 1413 and 1416 violate the equal protection or due process provisions of the Nebraska and U.S. Constitutions because of appellant's claim for attorney fees under § 1988. Therefore, we shall address appellant's constitutional assignments of error.

Appellant's third assignment of error sets forth his assertion that ordinances Nos. 1413 and 1416 denied him equal protection under the law as assured by article I, § 1, of the Nebraska Constitution and article XIV, § 1, of the U.S. Constitution. Appellant asserts that the city's actions have violated the equal protection provisions of the U.S. and Nebraska Constitutions because the classification created by ordinance No. 1413 does not rationally relate to the city's objective. Appellee contends that ordinance No. 1413, as amended by ordinance No. 1416,

does not run afoul of equal protection principles because a rational relationship exists between the use of electrical services and waste production. We shall first consider appellant's claims as to ordinance No. 1413 and then proceed to consider appellant's claims as to ordinance No. 1416.

This court begins with a presumption of validity when passing upon the constitutionality of an ordinance. *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993); *City of Lincoln v. ABC Books, Inc.*, 238 Neb. 378, 470 N.W.2d 760 (1991). As a result, the burden is on the challenging party to demonstrate a constitutional defect. *Village of Brady v. Melcher, supra*; *City of Lincoln v. ABC Books, Inc., supra.* In order to meet constitutional requirements, a city ordinance must respond to the same tests applied to statutory enactments. See *Skag-Way Department Stores, Inc. v. City of Grand Island*, 176 Neb. 169, 125 N.W.2d 529 (1964).

The Nebraska Constitution and the U.S. Constitution have identical requirements for equal protection challenges. *Pick v. Nelson*, 247 Neb. 487, 528 N.W.2d 309 (1995). As a general matter, the Equal Protection Clause requires the government to treat similarly situated people alike. *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996). The initial inquiry in an equal protection analysis focuses on whether the challenging party has demonstrated that he or she was treated differently than other similarly situated persons. *Id.* Absent this threshold showing, one lacks a viable equal protection claim. *Id.*

In making the threshold determination of whether appellant has been treated differently than other similarly situated persons, we must focus on whether appellant is similarly situated for the purposes of the challenged governmental action. See *id.* The challenged governmental action here is the city's adoption of a management fee. Consequently, the relevant inquiry is whether appellant, as an owner and occupier of a Wahoo residence, is similarly situated to other owners and occupiers of Wahoo residences for the purposes of the management fee. The answer to this inquiry is redundantly simple. All owners and occupiers of Wahoo residences are required to pay the management fee. Appellant, as an owner and occupier of a residence in

Wahoo, is similarly situated to other owners and occupiers of Wahoo residences for the purposes of the management fee.

In addition, appellant must also have been treated differently than those persons to whom he is similarly situated. See *id.* The evidence in the record reveals that the city has treated similarly situated persons differently under the terms of the ordinance. Appellant has been charged a $10 management fee as the owner and occupier of a residence because his residence has an individual electrical meter. Those owners or occupiers of residences without an individual electrical meter, however, were not charged a management fee. Simply stated, appellant has made the threshold showing of dissimilar treatment of similarly situated persons.

Once this threshold showing has been made, the inquiry then shifts to consider whether the ordinance at issue can survive judicial scrutiny. See *id.* If an ordinance involves economic or social legislation not implicating a suspect class or fundamental right, courts will ask only whether a rational relationship exists between a legitimate interest and the means selected by the city to accomplish that end. See *id.* See, also, *State v. Michalski*, 221 Neb. 380, 377 N.W.2d 510 (1985). The rational relationship standard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the city's objective. *State v. Atkins, supra.* Thus, social and economic measures run afoul of the Equal Protection Clause only when the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that a court can conclude only that the city's actions were irrational. *Id.*

Since the next stage in our inquiry rests on determining whether appellant has demonstrated that no rational relationship exists between the classification scheme and the city's objective, we must make three initial determinations: first, what classifications the city created by adopting ordinance No. 1413; second, the city's objective in creating these classifications; and third, whether the classifications created by the city's adoption of ordinance No. 1413 rationally relate to the city's objective.

The terms of ordinance No. 1413 actually create two classifications. First, ordinance No. 1413 distinguishes between those

Wahoo residences and businesses which receive electrical services and those residences and businesses which do not receive electrical services. Even though this initial classification would appear to be of little import in making our determination, the classification is important to note because the city created a second classification within that class of owners and occupiers of residences utilizing electrical services. This second classification distinguishes between those owners and occupiers of a residence with an electrical meter and those owners and occupiers of a residence without an electrical meter. Those owners and occupiers of Wahoo residences with an electrical meter are responsible for paying the management fee, while those owners and occupiers of Wahoo residences without an electrical meter are not responsible for the fee. This occurred because the city resolved the problem of being unable to charge residences within multiple-unit complexes without an electrical meter by charging such complexes as businesses under ordinance No. 1413.

The city's objective can be found in both ordinance No. 1413 and the city's letter of explanation. These two documents reveal that the city's objective was to raise the revenue necessary for closing its landfill in compliance with federal and state guidelines. We now turn to determining whether the classifications created by the city's adoption of ordinance No. 1413 rationally relate to the city's objective.

Even though the rational relationship standard is the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause, *State v. Atkins, supra,* it is difficult to comprehend how the aforementioned classification rationally relates to the city's objective. The city argues that the record demonstrates a rational relationship between landfill use and a residence or business which uses sewer, water, and electricity service. In other words, a residence or business using sewer, water, and electricity contains persons likely producing waste and that waste must be disposed of generally in a landfill. However, the city's act of classifying those owners and occupiers of residences with an electrical meter as being responsible for bearing the burden of the costs associated with closing the city's landfill does not bear any relationship to the city's objec-

tive of raising revenue for closing the city landfill in compliance with federal and state guidelines. The city may be correct in assuming that these persons are generating waste; however, the city's act of burdening this class of persons with this responsibility is simply irrational. See *id.* It is impossible to find any justification for charging this class of persons with the financial burden involved in closing a 17-year-old landfill because the members of this class happen to use electrical service and their residences had an electrical meter during the 10-month period when the city needed to raise revenue for this project. Furthermore, the generation of waste by this class of persons for a 10-month period has absolutely no relationship to the city's objective of raising revenue. This classification is wholly irrelevant to the city's objective.

As demonstrated by the foregoing analysis, the trial court erred in determining that ordinance No. 1413 as applied does not violate the equal protection provisions of the Nebraska and U.S. Constitutions. Consequently, we hold that ordinance No. 1413 is void. We shall now turn our attention to ordinance No. 1416.

In addition to asserting that ordinance No. 1416 violates the Equal Protection Clause, appellant also asserts that ordinance No. 1416 is contrary to the authority granted by statute and the Due Process Clauses of the Nebraska and U.S. Constitutions. All of appellant's arguments on these issues focus on the denial of access to the landfill and garbage collection services. These issues are moot. A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *State ex rel. Shepherd v. Neb. Equal Opp. Comm.,* 251 Neb. 517, 557 N.W.2d 684 (1997); *Duggan v. Beermann,* 245 Neb. 907, 515 N.W.2d 788 (1994). Appellant's petition recognizes that the city repealed on January 28, 1993, that portion of ordinance No. 1416 which enabled the city to deny persons delinquent in paying their management fees access to the landfill and garbage collection services. In addition, the record reveals that the portion of ordinance No. 1416 on which appellant's claims focus, section b, was never enforced by the city. These issues are moot because they ceased to exist prior to the outset of this litigation. The merits of these issues shall not be considered on appeal.

Appellant's fifth assigned error asserts that he has been deprived of his constitutional rights as protected by 42 U.S.C. § 1983, and that, therefore, he is entitled to attorney fees pursuant to § 1983.

The principle that a local government entity may be held liable for depriving a citizen of his or her civil rights under § 1983 is well settled. See *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A local government entity is responsible under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." 436 U.S. at 694. *Monell* provides that a party may succeed in a § 1983 action against a municipality if an official policy causes the deprivation of a constitutional right. See *id.* An ordinance satisfies the policy or custom requirement. *Id.* Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The prevailing party in a § 1983 action is generally entitled to attorney fees. See § 1988.

The foregoing equal protection analysis reveals that an official policy, ordinance No. 1413, has deprived appellant of his constitutional right to equal protection. In ordinary circumstances, appellant's attorney would be entitled to attorney fees. See, § 1988; *Maldonado v. Nebraska Dept. of Pub. Welfare*, 223 Neb. 485, 391 N.W.2d 105 (1986). However, counsel for appellant has failed to comply with Neb. Ct. R. of Prac. 9F (rev. 1996). Counsel has not filed a motion for an allowance of such fees or an affidavit in support of said motion. Appellant is granted 2 weeks' leave to file his rule 9F motion and an affidavit in support thereof.

Because the foregoing analysis is dispositive, it is unnecessary to address appellant's first, fourth, and sixth assigned errors. The order of the trial court is hereby reversed, and the cause is remanded with direction to enter judgment in favor of appellant.

REVERSED AND REMANDED WITH DIRECTION.