REQUESTED BY: Thomas Baker, Nebraska State Senator
Our office has received your opinion request regarding the inclusion of "dairy operations" in the Rural Economic Opportunities Act. Neb. Rev. Stat. §§ 77-5401 — 77-5414. You generally ask whether it is constitutional to include a dairy operation as a "qualified business" under the Rural Economic Opportunities Act without additionally including feedlots.
The proposed amendment to the Act, which your office sent as a rough draft, is fairly concise. The amendment changes Neb. Rev. Stat. § 77-5403(13)(a) to include "A dairy operation" as a "qualified business." The only other change the amendment makes is to delete the reference to dairy cattle in Neb. Rev. Stat. §77-5403(13)(b), as described in this excerpt of the statute:
 For purposes of this subdivision, livestock operation means the feeding or holding of beef cattle, dairy cattle, horses, swine, sheep, poultry, or other livestock in buildings, lots, or pens;
Neb. Rev. Stat. § 77-5403(13)(b).
The proposed amendment makes no other changes to the Rural Economic Opportunities Act.
In response to your question on constitutionality, we must examine whether the proposed amendment's changes to the Rural Economic Opportunities Act would result in a violation of the equal protection clause in the Nebraska and U.S. Constitutions. Nebraska's Constitution, as a result of a recent amendment, now mirrors the relevant language of U.S. Const. art. 14, stating in relevant part: "No person shall be deprived of life, liberty or property, without due process of law, nor be denied equal protection of the laws." Neb. Const. art. I, § 3. Since the amendment's passage, the court has stated "The Nebraska Constitution and U.S. Constitution have identical requirements for equal protection challenges." DeCoste v. City of Wahoo,583 N.W.2d 595, 601, 255 Neb. 266, 274 (1998). So our analysis of the proposal is the same for both the U.S. and Nebraska Constitutions.
First, does the amendment create rights and benefits for one group, "dairy operations", while not giving these same benefits to similarly situated livestock operations, such as "feedlots"? The amendment includes "dairy operation" as one of the qualified businesses described in the Rural Economic Opportunities Act, while deleting "dairy cattle" as part of the list of livestock operations which are excluded from the Rural Economic Opportunities Act. See Neb. Rev. Stat. §§ 77-5403(13)(a) 77-5403(13)(b). Your question concerns the propriety of including dairy operations while excluding feedlots. Plaintiffs challenging such a statutory scheme would have the burden of proving they are "similarly situated" to dairy operations, so they could gain standing to challenge the amendment. DeCoste, 583 N.W.2d at 601,255 Neb. at 274. To gain standing to challenge the statute, the litigating feedlot owners would first have to show they are ". . . similarly situated for the purposes of the challenged governmental action . . ." to dairy cattle owners. Id. In describing the equal protection clause, the Court has stated: ". . . it simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Pfizer v. Lancaster Board ofEqualization, 260 Neb. 265, 273, 616 N.W.2d 326, 335 (2000). Dairy cattle, which would be part of a dairy operation, and beef cattle, which are in feedlots, are both listed as "livestock operations" in the Rural Economic Opportunities Act. Further, Nebraska's statutory scheme considers both dairy cattle and beef cattle to be "livestock". Neb. Rev. Stat. § 54-701.03 and 54-1902. Dairy cattle owners are similarly situated to other livestock operations, particularly feedlots. Next, a beef cattle producer ". . . must also have been treated differently than those persons to whom he is similarly situated." DeCoste, 583 N.W.2d at 601, 255 Neb. at 275. Dairy operations would be able to qualify for income tax credits for new jobs and new investments made, but beef feedlots would not qualify. This would be differential treatment of a similarly situated class.
Since dairy operations are similarly situated to other livestock operations, then ". . . the inquiry shifts to whether the legislation at issue can survive judicial scrutiny." State v.Atkins, 250 Neb. 315, 321, 549 N.W.2d 159, 163 (1996). Is a feedlot owner in a suspect class or a person with a fundamental right to own a feedlot? "[I]f a statute involves economic or social legislation not implicating a fundamental right or suspect class, courts will ask only whether a rational relationship exists between a legitimate state interest and the statutory means selected by the legislature to accomplish that end. . . . Upon a showing that such a rational relationship exists, courts will uphold the legislation." Schindler v. Department of MotorVehicles, 256 Neb. 782, 784, 593 N.W.2d 295, 298 (1999). Feedlot owners are not in a suspect class or persons with a fundamental right under the constitutions, so the amendment is subject to the "rational basis" test, and not a higher form of scrutiny. The legislative history must show a legitimate state interest being furthered by the amendment, and must further show a rational relationship between the amendment's provisions and that state interest. "In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense." Stenberg v. Moore,258 Neb. 199, 208, 602 N.W.2d 465, 472 (1999).
The Rural Economic Opportunities Act and the proposed amendment do not have language differentiating between dairy operations and feedlots. The legislative history of the Act does indicate that livestock operations are not to be included in the Rural Economic Opportunities Act. Floor Debate on LB 936, 96th Neb. Leg., 2nd. Sess. 11381-11386 (March 23, 2000). Although there is no discussion in the current Rural Economic Opportunities Act or its legislative history of an objective to classifying "dairy operations" differently, there are conceivable reasons for such a classification. Dairy operations may produce value-added foods, rather than just raw milk, which would keep more value for those products in Nebraska. Unique circumstances may exist with regard to dairy operations, which may make it more difficult to attract them to Nebraska than feedlots. To strengthen the amendment's standing under an equal protection challenge, the amendment and the Legislature's debate upon it should articulate a legitimate state interest in separately classifying dairy operations, and further articulate how the classification relates to that interest. Without such legislative intent being evident at this time, however, our office can only provide speculative justifications for a dairy operation's inclusion as a "qualified business". Under the mentioned justifications, the amendment should survive an equal protection challenge under the Nebraska and U.S. Constitutions.
In conclusion, our office has determined that a "dairy operation", which may include a dairy farm or a milk processing facility, is similarly situated to feedlots and other livestock operations. The inclusion of a dairy operation as a "qualified business" under the Rural Economic Opportunities Act results in a classification under the equal protection clauses of the Nebraska and U.S. Constitutions. Since the amendment's classification of "dairy operations" does not affect a suspect class or the fundamental rights of feedlot owners, the amendment will be analyzed to show how its tax incentives to dairy operations are rationally related to a legitimate state interest. While the proposed amendment, the Rural Economic Opportunities Act and its legislative history currently do not indicate a reason to classify dairy operations, there are likely justifications for such a classification which rationally relate to a legitimate state interest. If the Legislature's intent is clearly stated in the amendment or its legislative history, the amendment is even more likely to survive an equal protection challenge under the Nebraska or U.S. Constitutions.
Sincerely,
 DON STENBERG Attorney General
 William R. Barger Assistant Attorney General