Stacy, J., concurring.
I agree with the majority's analysis and holding, including its careful application of rational basis scrutiny to analyze the equal protection challenge presented here. I write separately to emphasize something the majority opinion does not do: apply a threshold "similarly situated" test.
That is significant, because many of our prior opinions describe a threshold showing that a litigant must satisfy before a court will engage in constitutional scrutiny of an equal protection claim.[1] As recently *421 as 2015, we described the threshold showing this way:
The initial inquiry in an equal protection analysis is whether the challenger is similarly situated to another group for the purpose of the challenged government action. Absent this threshold showing, there is not a **354 viable equal protection claim. In other words, dissimilar treatment of dissimilarly situated persons does not violate equal protection rights.[2]
This court first applied the threshold "similarly situated" test in the 1996 case of State v. Atkins .[3] There, this court was considering whether the Equal Protection Clause was violated by the different statutory methods used to calculate good time for inmates housed in state prisons[4] as compared to those housed in county jails.[5] This court began its analysis by reciting a principle recognized by the U.S. Supreme Court: "As a general matter, the Equal Protection Clause requires the government to treat similarly situated people alike."[6] We then adopted a new principle articulated by the U.S. Eighth Circuit Court of Appeals in Klinger v. Department of Corrections[7] : "[T]he dissimilar treatment of dissimilarly situated persons does not violate equal protection rights."[8] We also adopted the threshold test applied by the majority in Klinger and announced:
[T]he initial inquiry in an equal protection analysis focuses on whether one has demonstrated that one was treated differently than others similarly situated. Absent this threshold showing, one lacks a viable equal protection claim....
If one can make this threshold showing, the inquiry then shifts to whether the legislation at issue can survive judicial scrutiny.[9]
**355 In Atkins , we concluded it was unnecessary to reach the merits of the equal protection claim because we determined, as a threshold matter, that inmates in state prisons were not similarly situated to inmates in county jails.
Although the adoption in Klinger of a threshold similarly situated test has been criticized by judges[10] and commentators[11] *422 as undercutting meaningful equal protection analysis, this court has continued to apply the test to equal protection claims in a variety of contexts.[12] In many of those cases, we found the threshold "similarly situated" showing was not met, and denied the equal protection claim without reaching the merits or engaging in constitutional analysis.[13] In doing so, our application of the threshold "similarly situated" test effectively foreclosed meaningful equal protection review altogether by relying on nothing more than factual differences between two groups. This is not to suggest that factual differences are irrelevant to the equal protection analysis, but as the U.S. Supreme Court's holding in **356 Cleburne v. Cleburne LivingCenter, Inc.[14] illustrates, the mere fact that two groups are different from one another does not mean the State can show a rational basis for treating them differently under the law.
The legal conclusion that two groups are not "similarly situated" is not one courts should be making as a threshold matter, as doing so serves only to insulate the challenged classification from any meaningful equal protection review. If two groups are not similarly situated, the proper constitutional analysis will bear that out. The majority opinion illustrates this point.
After reciting the overarching principle that "[t]he Equal Protection Clause requires the government to treat similarly situated people alike" the majority proceeds to analyze the equal protection claim by applying rational basis scrutiny to the age-based classification being challenged here. Only after completing this analysis does the majority conclude that Hibler's equal protection claim lacks merit.
A threshold "similarly situated" inquiry is a poor substitute for careful judicial scrutiny of the fit between the State's interest and the challenged classification. I would like to see this court expressly disapprove of our prior cases that have recognized a threshold "similarly situated" inquiry in equal protection cases. But I am encouraged by the fact that the majority opinion neither cites to nor endorses a threshold "similarly situated" test, and I therefore concur in all respects.

See, State v. Loyuk, 289 Neb. 967, 857 N.W.2d 833 (2015) ; Sherman T. v. Karyn N., 286 Neb. 468, 837 N.W.2d 746 (2013) ; State v. Harris, 284 Neb. 214, 817 N.W.2d 258 (2012) ; State v. Rung, 278 Neb. 855, 774 N.W.2d 621 (2009) ; In re Interest of J.R., 277 Neb. 362, 762 N.W.2d 305 (2009) ; Kenley v. Neth, 271 Neb. 402, 712 N.W.2d 251 (2006) ; In re Interest of Phoenix L., 270 Neb. 870, 708 N.W.2d 786 (2006), disapproved in part on other grounds, In re Interest of Destiny A. et al., 274 Neb. 713, 742 N.W.2d 758 (2007) ; Hass v. Neth, 265 Neb. 321, 657 N.W.2d 11 (2003) ; Benitez v. Rasmussen, 261 Neb. 806, 626 N.W.2d 209 (2001) ; Bauers v. City of Lincoln, 255 Neb. 572, 586 N.W.2d 452 (1998) ; Gramercy Hill Enters. v. State, 255 Neb. 717, 587 N.W.2d 378 (1998) ; DeCoste v. City of Wahoo, 255 Neb. 266, 583 N.W.2d 595 (1998) ; State v. Atkins, 250 Neb. 315, 549 N.W.2d 159 (1996).

Loyuk , supra note 1, 289 Neb. at 918, 857 N.W.2d at 844.

Atkins , supra note 1.

See Neb. Rev. Stat. § 83-1,101 (Cum. Supp. 2018).

See Neb. Rev. Stat. § 41-502 (Reissue 2010).

Atkins , supra note 1, 250 Neb. at 320, 549 N.W.2d at 163, citing City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

Klinger v. Department of Corrections, 31 F.3d 727 (8th Cir. 1994).

Atkins , supra note 1, 250 Neb. at 320, 549 N.W.2d at 163.

Id. at 320-21, 549 N.W.2d at 163 (citation omitted).

See, e.g., Women Prisoners of D.C. Correct. v. D.C., 93 F.3d 910 (D.C. Cir. 1996) (Rogers, Circuit Judge, concurring in part, and in part dissenting); Klinger , supra note 7 (McMillian, Circuit Judge, dissenting); Varnum v. Brien, 763 N.W.2d 862, 882 (Iowa 2009) ("[i]n considering whether two classes are similarly situated, a court cannot simply look at the trait used by the legislature to define a classification under a statute and conclude a person without that trait is not similarly situated to persons with the trait").

See, Angie Baker, Note, Leapfrogging over Equal Protection Analysis: The Eighth Circuit Sanctions Separate and Unequal Facilities for Males and Females in Klinger v. Department of Corrections, 31 F.3d 727 (8th Cir. 1994), 76 Neb. L. Rev. 371 (1997) ; Giovanna Shay, Similarly Situated, 18 Geo. Mason L. Rev. 581 (2011).

See cases cited supra note 1.

See, e.g., In re Interest of Phoenix L. , supra note 1 (parents of Indian children not similarly situated to parents of non-Indian children); Benitez , supra note 1 (those with unsubstantiated reports of child abuse not similarly situated to those with court-substantiated reports of child abuse); Gramercy Hill Enters. , supra note 1 (two nursing homes not similarly situated); Atkins , supra note 1 (county jail inmates and state prison inmates not similarly situated).

Cleburne , supra note 6.