# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, ALDYKIEWICZ, and SALUSSOLIA
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 WILLIAM A. COLLINS**
**United States Army, Appellant**

ARMY 20170032

Headquarters, United States Army Recruiting Command
Matthew A. Calarco and J. Harper Cook, Military Judges
Colonel Rick S. Lear, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Tiffany M. Chapman, JA; Major Todd W. Simpson, JA; Captain Augustus Turner, JA (on brief).

For Appellee:  Lieutenant Colonel Eric K. Stafford, JA; Major Virginia Tinsley, JA; Captain Jeremy Watford, JA (on brief).

4 December 2018

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Judge:

Appellant raises two assignments of error, both of which merit discussion but no relief.  First, appellant alleges his defense counsel was ineffective for "failing to seek [110 days] credit for civilian pretrial confinement."[1]  Second, appellant claims relief is warranted "because it took 125 days from action to appellate docketing."  Each assignment of error is discussed below.[2]

---

[1] Appellant's ineffective assistance of counsel allegation focuses on counsel's failure to seek credit for civilian confinement from 22 September 2016 through adjournment of his court-martial on 18 January 2017.

[2] A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of three specifications of willfully disobeying a superior commissioned officer, six specifications of violating a general regulation, one

(continued . . .)

## BACKGROUND

Appellant is a former Staff Sergeant[3] and member of the United States Army Recruiting Command (USAREC) assigned to the Omaha Recruiting Command, Omaha, Nebraska. Appellant used his position as a recruiter to establish unprofessional, inappropriate, and, in some cases, sexual relationships with potential recruits (i.e., high school students). His actions not only violated a USAREC Regulation in effect at the time, but they were in direct contravention of his company commander's written order to "have no contact with any of the Omaha Public Schools or surrounding school systems" and "[no] contact with any students, future [s]oldiers, or applicants." These orders were given because of appellant's alleged recruiter improprieties.

Eventually appellant's actions triggered a civilian law enforcement investigation as well as an administrative investigation under Army Regulation (AR) 15-6. *See* Army Reg. 15-6, Boards, Commissions, and Committees: Procedures for Administrative Investigations and Boards of Officers (1 Apr. 2016). Appellant's actions included, *inter alia*: providing high school students alcohol; exchanging over 35,000 electronic, personal, non-official messages with two female high school students (MV and EM), some of which were incredibly graphic, indecent, and of a sexual nature; engaging in a personal and unprofessional relationship with MV when she was only fifteen years-old, a relationship that included sexual acts after MV turned sixteen; engaging in a personal and unprofessional relationship with EM

---

(. . . continued)
specification of a false official statement, and one specification of obstruction of justice, in violation of Articles 90, 92, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892, 907 and 934 (2012) [UCMJ]. The military judge sentenced appellant to a dishonorable discharge and forty-five months confinement. The military judge credited appellant with five days of sentencing credit. Pursuant to appellant's pre-trial agreement, the convening authority approved only so much of the sentence as provided for confinement for two years and a dishonorable discharge. At the time of trial, appellant was already an E-1 and confined by the state of Nebraska. As a result, appellant's duty and pay statuses were "confined civil authorities" and "no-pay due," respectively. The issues raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), are without merit.

[3] All charges were preferred while appellant held the rank of Staff Sergeant, a rank held at all times relevant to the alleged misconduct. Prior to his court-martial, due to his civilian criminal conviction and confinement, appellant was administratively reduced to the rank and grade of Private (E-1). *See* Army Reg. 600-8-19, Personnel-General: Enlisted Promotions and Reductions, para. 10-3 (25 Apr. 2017). This civilian confinement forms the basis for appellant's first assignment of error.

2

when she was only fourteen years-old; sexual intercourse with EM after she turned sixteen; and, buying EM "the Plan B pill" to avoid pregnancy following one of their sexual encounters.

*Chronology*

On or about 30 September 2014, concerned by appellant's conduct towards potential recruits, appellant's company commander ordered appellant to "have no contact with any of the Omaha Public Schools or surrounding school systems" and to have no contact "with any students, future [s]oldiers, or applicants," an order appellant understood and acknowledged.

On or about 19 February 2016, an AR 15-6 investigation was initiated into appellant's actions. When confronted by the investigating officer, appellant lied about his interactions with students, among other things, and attempted to influence the potential testimony of at least one witness, EM, by calling her and telling her to tell investigators that "she made [the allegations involving appellant] all up because of her anxiety," and further to "testify falsely" before military and civilian investigators.

Between February 2016 and on or about March 2016, EM's parents obtained a civilian protective order (CPO) which prohibited appellant from contacting EM.[4]

On or about 23 March 2016, in response to an allegation that appellant was in violation of the CPO, Omaha Police Department (OPD) investigators made personal contact with EM. She informed them that appellant had been in contact with her daily since the issuance of the CPO, showing them recent text messages between herself and appellant from 16, 17, 19, 20, and 21 March 2016. The investigators, with EM's consent, took her phone for further examination. Leaving EM's residence, they proceeded to appellant's apartment whereupon questioning appellant denied any contact with EM. Only minutes later, after the investigators left appellant's apartment, appellant again made contact with EM via snapchat. Unbeknownst to him, the investigators, who had just left his apartment, received the message as they were still in possession of EM's phone. The investigators returned to appellant's apartment at which time he was immediately arrested for violating the CPO.

According to appellant's unrebutted post-trial affidavit, "[he] bonded [himself] out of lock up *a few days* following [his] arrest." (emphasis added).

---

[4] The company commander's September 2014 order, while broader than the state CPO, similarly prohibited appellant from contacting EM since EM fell into the prohibited contacts group of "students, future [s]oldiers, or applicants."

On 28 April 2016, appellant was charged with two specifications of disobeying a superior commissioned officer (Specifications 1 and 2 of Charge I) and one specification of obstructing justice (the Specification of Charge II), violations of Articles 90 and 134, UCMJ.

On 11 July 2016, appellant pleaded guilty in Nebraska state court to violating a civilian protective order and contributing to the delinquency of a minor.[5]

On 29 July 2016, the following additional charges were preferred against appellant: six specifications of disobeying a superior commissioned officer (Specifications 1- 6 of Additional Charge I); seventeen specifications of failure to obey a lawful general regulation (Specifications 1-17 of Additional Charge II); five specifications of false official statement (Specifications 1-5 of Additional Charge III); two specifications of committing a lewd act upon a child under sixteen years of age (Specifications 1 and 2 of Additional Charge IV); and, three specifications of obstructing justice (Specifications 1-3 of Additional Charge V), violations of Articles 90, 92, 107, 120b, and 134, UCMJ.[6]

On 22 September 2016, appellant was sentenced by the state of Nebraska to two 365-day sentences to "be served consecutively."

On 18 January 2017, appellant pleaded guilty at a general court-martial to: three specifications of willfully disobeying a superior commissioned officer (Specifications 1, 2, and 6 of Additional Charge I); six specifications of violating a general regulation (Specifications 1, 2, 8, 10, 12, and 14 of Additional Charge II); two specifications of providing a false official statement (Specifications 1 and 3 of

---

[5] Appellant was charged with two counts of violating a protective order in violation of Neb. Rev. Stat. § 42-924 (2000). In exchange for his guilty plea to count one, the State dismissed count two. Appellant was also charged with one count of contributing to the delinquency of a minor and one count of procuring or selling alcohol to a minor in violation of Neb. Rev. Stat. §§ 28-709 and 53-180 (2000). In exchange for his guilty plea to contributing to the delinquency of a minor, the state dismissed the charge of procuring or selling alcohol to a minor.

[6] Prior to arraignment, the Government dismissed Specifications 7 and 17 of Additional Charge II, dismissed Additional Charge IV and its specifications, and renumbered the charges and specifications accordingly.

Additional Charge III)[7]; and, one specification of obstructing justice (Specification 2 of Additional Charge IV), violations of Articles 90, 92, 107, and 134, UCMJ.

With the exception of Specification 6 of Additional Charge I, which alleges disobedience of a superior commissioned officer between on or about 30 September 2014 and 25 March 2016, all other offenses allege crimes committed by appellant before his civilian arrest on 23 March 2016.

On or about October 2017, appellant "completed" his civilian confinement and was transferred to military custody to serve the remainder of his military confinement.[8]

At no time was appellant's civilian confinement at the request of the military or based on military charges.

---

[7] Prior to entry of findings, the military judge, sua sponte, merged both specifications, finding the pleadings represented an unreasonable multiplication of charges.

[8] Notwithstanding its availability, neither appellant nor the government provided this court with appellant's exact date of release from civilian confinement. Assuming: a release date of 31 October 2017, the last day of the month; 365 days in a year; and, the consecutive nature of appellant's two 365-day sentences, appellant served a total of 375 days of civilian confinement of his total 730 days adjudged confinement. The aforementioned time of service is consistent with appellant's projected release date from Nebraska confinement when considering that state law provides a city or county inmate with seven days confinement credit for every fourteen days of confinement served without incident. *See* Neb. Rev. Stat. § 47-502.

> Any person sentenced to or confined in a city or county jail . . . shall, after the fifteenth day of his or her confinement, have his or her remaining term reduced one day for each day of his or her sentence or sanction during which he or she has not committed any breach of discipline or other violation of jail regulations.

*Id*.; *see also*, *State v. Atkins*, 250 Neb. 315 (Neb. Ct. App. 1998) (Neb. Rev. Stat. § 47-502 provides for good time credit at the rate of seven days per fifteen days spent in city/county jail). A strict application of the above statute with a release of 31 October 2017, the absence of any "breach of discipline or other violation of jail regulations," and accounting for the absence of any good time credit for the first fourteen days of confinement, appellant should have served 373 days of confinement.

**LAW AND DISCUSSION**

*A. Ineffective Assistance of Counsel for Failing to Seek "Pretrial" Confinement Credit*

Appellant alleges his trial defense counsel was ineffective for failing to seek confinement credit for "pretrial confinement" from 22 September 2016, the date of appellant's confinement by the state of Nebraska, through 18 January 2017, the date his military sentence was adjudged. Defense appellate counsel alleges an entitlement to "approximately 110 days credit."[9]

Ineffective assistance of counsel (IAC) claims are reviewed de novo. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). To succeed, appellant "must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citation omitted).

---

[9] A review of appellant's brief before this court, a Julian calendar, and appellant's post-trial affidavit create some confusion as to what confinement period is at issue vis-à-vis the demand for confinement credit and exactly how much credit appellant is allegedly owed, if any. In his brief, defense appellate counsel focuses on the period of 22 September 2016 through 18 January 2017, arguing appellant is due "approximately 110 days." Using 22 September 2016 as the start date and excluding 18 January 2017, the first day of appellant's adjudged military confinement, appellant should be claiming 118 and not 110 days of credit. Lastly, rather than focus this court with his post-trial affidavit, in an affidavit that post-dates defense appellate counsel's submission, appellant confuses the issue by arguably asserting a claim to only "a few days" of credit, stating, in part:

> When I was initially arrested by Omaha Police in late March 2017 (sic), I bonded myself out of lock up a few days following my arrest. I received no credit when I was sentenced in Douglas County.
>
> During my court-martial sentencing, I was never advised by my defense counsel that I (sic) credit was available for my civilian pretrial confinement. Had I known of its availability, I would have asked for it.

Appellant was awarded five days of confinement credit unrelated to his time in civilian confinement, four days for the time he was in military custody in transit to/from Fort Knox for his arraignment and one day of Article 13, UCMJ, credit for having to attend his Article 32, UCMJ, pretrial hearing wearing a non-military uniform (i.e., orange prison jumpsuit).

Deficiency is shown by representation that falls "below an objective standard of reasonableness." *Id.* (citation omitted). Appellant's IAC claim is inexorably linked to his claim for pretrial confinement credit. Claims alleging denial of pretrial confinement credit are likewise reviewed de novo. *United States v. Smith*, 56 M.J. 290, 292 (C.A.A.F. 2002).

### 1. *Confinement from 22 September 2016 through 18 January 2017*

The pleadings before this court, from both the defense and government counsel, routinely refer to the period of 22 September 2016 through 18 January 2017 as "pretrial confinement." Appellant's IAC claim depends largely, if not entirely, on his claimed right to credit for those days spent in civilian confinement before his court-martial. In short, appellant claims an entitlement to *Allen* credit for the aforementioned period. *See United States v. Allen*, 17 M.J. 126 (C.M.A. 1984) (establishing entitlement to pretrial confinement credit under 18 U.S.C. § 3568 (repealed and replaced by 18 U.S.C. § 3585; *see United States v. Zackular*, 945 F.2d 423, 424 (1st Cir. 1991)); Dep't of Def. Instr. 1325.4, Treatment of Military Prisoners and Administration of Military Correction Facilities [DODI 1325.4] (7 Oct. 1968) (replaced by DODI 1325.07, Administration of Military Correctional Facilities and Clemency and Parole Authority (11 Mar. 2013) (C3, 10 Apr. 2018)); *see also United States v. Harris*, 78 M.J. 521, 524-25 (Army Ct. Crim. App. 2018).

Considering the cases cited by appellant, the government's response thereto, DODI 1325.07 and Department of Defense Sentence Computation Manual (DODM) 1325.7-M (27 Jul. 2004) (C3, 26 Sep. 2018), we find no entitlement to sentence credit for appellant's lawfully adjudged civilian post-trial confinement, confinement for civilian offenses that are separate and distinct from his military offenses.

Appellant's briefed claim for sentence credit for the aforementioned period, and thus his IAC claim, fails for the simple reason that the aforementioned period was not "pretrial confinement" that might entitle appellant to relief but rather lawfully adjudged post-trial confinement for which appellant has already received credit against another lawfully adjudged sentence. *See* DODM 1325.7-M, C2.4.2 (C3, 2018).

On 11 July 2016, appellant was convicted of two state crimes, neither of which formed the basis of any of his military charges. On 22 September 2016 appellant was sentenced by the state of Nebraska for those state crimes. The mere fact that appellant was confined prior to his court-martial does not transform otherwise lawfully adjudged post-trial confinement into "pretrial confinement."

Appellant cites, *inter alia*, *Allen* and its progeny, DODI 1325.07, and DODM 1325.7-M in support of his claimed right to sentence credit. A review of the cited

authority, however, fails to reveal any right to sentence credit for time spent in civilian post-trial confinement.

Every case cited by appellant in support of his claim involves a demand for credit related to time spent in pretrial, not post-trial, confinement. *See United States v. Allen*, 17 M.J. 126 (C.M.A. 1984); *United States v. Rosalesleonor*, ARMY 20140230, 2015 CCA LEXIS 260 (Army Ct. Crim. App. 23 Jun. 2015) (summ. disp.); *United States v. Atkinson*, 74 M.J. 645 (N.M. Ct. Crim. App. 2015); *United States v. Dave*, 31 M.J. 940 (A.C.M.R. 1990); *United States v. Davis*, 22 M.J. 557 (A.C.M.R. 1986); and *United States v. Huelskamp*, 21 M.J. 509 (A.C.M.R. 1985). None of the cited cases grant a military accused credit for time served while in civilian confinement following a lawfully adjudged civilian sentence for offenses separate and distinct from the accused's military offenses. That appellant's offenses stem from a continuous course of conduct and are arguably related offenses does not change the outcome. *See, e.g., United States v. Mooney*, 77 M.J. 252 (C.A.A.F. 2018) (military post-trial sentence runs concurrently with federal post-trial sentence; appellant not awarded credit for time served pursuant to federal (i.e., non-military) charges).

Appellant's reliance on DODI 1325.07 and DODM 1325.7-M is similarly misplaced.

Department of Defense Instruction 1325.07 directs that "[s]entence computation shall be calculated [in accordance with] DOD 1325.7-M." DODI 1325.07, para. 3.a.

Department of Defense Manual 1325.7-M requires prisoners receive "all sentence credit directed by the military judge" and that military judges "will direct credit for each day spent in *pretrial* confinement . . . for crimes for which the prisoner was later convicted." DODM 1325.7-M, para. C2.4.2 (C3, 2018). (emphasis added). This requirement, however, is not without limitation. Department of Defense Instruction 1325.07 goes on to state:

> Notwithstanding any other provision of this instruction or [DoD 1325.7-M], if a prisoner (accused) is confined in a non-military facility for a charge or offense for which the prisoner had been arrested after the commission of the offense for which the military sentence was imposed, the prisoner (accused) shall receive *no credit* for such time confined in the non-military facility when calculating his or her sentence adjudged at court-martial.

DODI 1325.07, para. 3.c. (emphasis added).

COLLINS—ARMY 20170032

On 22 September 2016, appellant commenced a period of post-trial civilian confinement. Every day spent in a Nebraska jail was time credited against his civilian sentence. A plain reading of the cited authorities reveals a lack of entitlement to any credit against appellant's adjudged military sentence.

Furthermore, appellant's civilian confinement is based on offenses that are separate and distinct from his military offenses. All but one of appellant's charged military offenses predated his arrest by civilian authorities. Only Specification 6 of Additional Charge I, disobedience of a superior commissioned officer between on or about 30 September 2014 and 25 March 2016, alleges an offense that, at first blush, post-dates his civilian arrest. However, the facts establish that all misconduct related to this offense pre-dates his arrest. Simple logic dictates no other conclusion. Once arrested on 23 March 2016 for violating a protective order by contacting EM, the arresting authorities are unlikely to have allowed appellant to contact students, future soldiers, or applicants, which included EM, contact that would necessarily have to occur from within his Nebraska jail cell. Similarly, it was impossible for appellant, during this period of "pretrial confinement," to enter any Omaha Public School or surrounding school premises or function.

Finally, even were we to find the confinement in question, the period of 22 September 2016 through 18 January 2017, was in fact "pretrial confinement," DODI 1325.07, para. 3c. would prohibit granting appellant any credit since appellant is not entitled to receive credit for time confined in Nebraska jail, for a Nebraska offense, for which he was arrested after the commission of the military offenses. *Id*.

2. *Confinement for a "few days" commencing on 23 March 2016*

Our resolution of appellant's claim for pretrial confinement credit for the period of 22 September 2016 through 18 January 2017 leaves two issues unresolved: (1) whether the military judge erred in failing to award appellant credit for the period covering his arrest on 23 March 2016 until he "bonded [himself] out of lock up a few days following [his] arrest" and (2) whether counsel was ineffective for not seeking credit for the aforementioned "few days."

A review of the record of trial reveals no mention of appellant's confinement following his 23 March 2016 arrest, an arrest only mentioned in passing in the stipulation of fact and by one witness, EM's father, during his sentencing testimony.[10] Neither the stipulation of fact nor the referenced testimony establish,

---

[10] Blocks 8 and 9 of both the original and additional charge sheets only reflect "Civilian Confinement" and the date "22 Sep 16" respectively. There is no reference to any confinement related to 23 March 2016.

9

with any degree of certainty, confinement related to appellant's 23 March 2016 arrest.[11]

The only evidence regarding appellant's confinement and subsequent release in March of 2016 is found in appellant's unrebutted affidavit wherein he states:

> When I was initially arrested by Omaha Police in late March 2017 (sic), I bonded myself out of lock up a few days following my arrest. I received no credit when I was sentenced in Douglas County.
>
> During my court-martial sentencing, I was never advised by my defense counsel that I (sic) credit was available for my civilian pretrial confinement. Had I known of its availability, I would have asked for it.

We find no error regarding the military judge's failure to specifically address appellant's "few days" of pretrial confinement beginning on 23 March 2016 when considering his detailed colloquy with the parties and appellant regarding appellant's civilian confinement generally, appellant's failure to specifically raise that period of confinement, and appellant's apparent waiver of any claim for confinement credit beyond the period related to his military custody while in transit to and from Nebraska to Fort Knox for his military arraignment.

The military judge's inquiry into any entitlement to confinement credit was extensive and detailed, addressing not only counsel but also appellant himself:

> MJ: [I] see on the charge sheets, and we have discussed it ad nauseum here, is that the accused has been in civilian confinement pursuant to a conviction on state charges that began on the 22nd of September 2016, and he is still continuing to serve that period of civilian confinement. And that's indicated on both charge sheets. Trial counsel, do you believe that there is any basis in law for any form of credit whatsoever for that period of confinement?
>
> ATC: No, Your Honor, the government does not believe there's any basis in law.
>
> MJ: Okay. Defense counsel, do you agree?

---

[11] The witness testified that following appellant's arrest "I think he posted bail or something."

DC:  Yes, Your Honor.

The parties then went on to discuss awarding appellant, out of "an abundance of caution," four days of credit attributable to the time appellant spent in military custody traveling to and from Fort Knox for his military arraignment.

Following the above, the military judge spoke directly with appellant:

MJ:  So, we're once again at that point where this is your decision.  It's not your defense counsel's decision.  It's your decision.  You can either accept the offer of the trial counsel, and if you accept that, then you will receive 4 days of -- I'm not sure what to call it, whether to call it pretrial confinement credit or maybe I'll just call it additional credit.  We'll call it additional credit, 4 days of additional credit, based upon you being transferred to Knox and back while confined.  Do you understand that?

ACC: Yes, Your Honor.

MJ:  All right.  So, your option is to accept that, or you can choose to litigate the matter at which case I will decide what the proper amount, if any, is.  I can make -- I may choose to make it more.  It might be exactly the same, or it might be less, down to including zero days. Do you understand that?

ACC: Yes, Your Honor.

MJ:  Okay.  Why don't you take a moment to discuss it with your defense counsel.  If you need a recess let me know, so you can make an informed decision on -- that you have.

After speaking with his defense counsel, appellant agreed to the credit as noted above.

ACC: I agree with the -- with the terms that were stated, Your Honor.

MJ:  Okay.  So, you agree to accept the trial counsel's offer of four days additional credit for being transported to Fort Knox and back while you were serving confinement under state charges.  Is that correct?

> ACC: Yes, Your Honor.
>
> MJ: Defense, do you desire to raise any other type of sentencing credit before the court?
>
> DC: No, Your Honor.

Notwithstanding the opportunity to tell the military judge about his pretrial confinement in March of 2016, appellant remained silent on the issue, mentioning it for the first time on appeal. The above colloquy reveals appellant waived any claim for sentence credit for his "few days" in confinement beginning on 23 March 2016 absent plain error. *See Rosalesleonor*, 2015 CCA LEXIS 260, at *4 ("failure at trial to seek *Allen* credit for pretrial civilian confinement will constitute waiver of that issue in the absence of plain error"). We find no error, plain or otherwise, in the military judge's handling of the confinement credit issue.

Having found waiver, we next address whether counsel was ineffective for failing to seek confinement credit for the related period. In other words, whether waiver of the issue was deficient performance by counsel resulting in prejudice to appellant.

Considering the plain language of the limitation found in DODI 1325.07, para. 3.c.,[12] we find neither deficient performance nor prejudice from trial defense counsel's failure to seek credit for appellant's pretrial confinement commencing on 23 March 2016, credit to which appellant was not entitled.

### B. *Excessive Post-Trial Delay in Dispatching Record of Trial to the Army Court of Criminal Appeals*

Appellant alleges that dilatory post-trial processing, specifically "125 days from action to appellate docketing," warrants relief, citing *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006) in support of his position. Appellant states in his brief:

> The convening authority took action on 5 May 2017, and the case was filed with this court on 7 November 2017. . . . [T]he record of trial is devoid of any explanation from any member of the Office of the Staff Judge Advocate for the 125 day delay.

Of the four factual assertions made by appellant in the above quoted passage, only one is accurate. The convening authority did act on appellant's case on 5 May

---

[12] *See* DODI 1325.07, para. 3.c., supra p. 8.

2017. The record, however, was received by this court on 3 November 2017, not 7 November 2017. The time between action and appellate docketing was 182 days, not 125 days. Finally, and most importantly, consistent with our higher court's guidance in *Moreno* that "convening authorities . . . document reasons for delay," *Moreno*, 63 M.J. at 143, appellant's record of trial contains a memorandum documenting the post-trial processing of appellant's case and explaining the reason for the delay.[13]

In other words, the record of trial is not "devoid of any explanation from any member of the Office of the Staff Judge Advocate for the [182] day delay." The third paragraph of the memorandum, signed by the Staff Judge Advocate, a Colonel and the senior "member of the Office of the Staff Judge Advocate," states, in part:

> The court reporter was unexpectedly hospitalized and placed on convalescent leave for a long period of time and there was a miscommunication as to whether this file had been sent to ACCA by the court reporter who normally oversees the post-trial processing at USAREC.

The delay in dispatching appellant's record to this court was presumptively unreasonable. *See United States v. Moreno*, 63 M.J. at 142 (failure to docket case with the court of criminal appeals within thirty days of action is presumptively unreasonable triggering the four factor analysis under *Barker v. Wingo*, 407 U.S. 514 (1972) to assess whether delay rises to the level of a due process violation).

Having considered *Barker's* four factors: (1) the length of the delay; (2) the reasons for the delay; (3) appellant's assertion of the right to timely review and appeal; and (4) prejudice, with no one factor being dispositive, and *Moreno's* three sub-factors to assess the factor of prejudice: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired, we find no due process violation in the post-trial processing of appellant's case. *United States v. Arias*, 72 M.J. 501, 504 (Army Ct. Crim. App. 2013) (citations and quotations omitted).

Additionally, the post-trial processing of appellant's case was not "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

---

[13] The allied documents in the record of trial contain a memorandum, dated 31 October 2017, signed by the Staff Judge Advocate, with the subject "Post-Trial Processing Timeline."

On 22 September 2016, appellant was lawfully adjudged post-trial confinement by the state of Nebraska for separate and distinct civilian offenses. He was sentenced to two 365-day sentences, sentences that were to run consecutively. On 18 January 2017, appellant was sentenced by a military court-martial to forty-five months confinement but had a negotiated plea deal for two years confinement, a confinement clock that began to run on 18 January 2017 despite the fact that the convening authority could have, sua sponte, deferred appellant's service of his military confinement until completion of his civilian confinement. *See* Articles 57 and 57a, UCMJ; Rule for Courts-Martial 1107(d)(3); *United States v. Mooney*, 77 M.J. 252, 255-57 (C.A.A.F. 2018). In October of 2017, appellant completed serving his civilian confinement and was returned to military control to complete his military confinement. In other words, appellant "served" approximately nine months of his two-year military sentence without ever setting foot in a military or federal prison, receiving credit for his state confinement.

Considering the nature of the offenses of which appellant stands convicted, that appellant was convicted by two separate sovereigns, that he was released from state custody well before the expiration of his two year adjudged confinement, serving at most 375 of a 730 day sentence, and that his military confinement clock began to run the date his sentence was announced, despite the fact that he remained in civilian custody for approximately nine months of his two year military sentence, we decline to exercise our Article 66(c), UCMJ, sentence appropriateness authority to grant appellant relief for the post-trial processing delay in this case.

**CONCLUSION**

The findings and sentence are AFFIRMED.

Senior Judge WOLFE and Judge SALLUSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

14